FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

SEP 2 7 2016

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**

DAVIS NEUROLOGY, P.A.,                    )
on behalf of itself and all other         )
entities and persons similarly situated,  )
                                          )
        Plaintiffs,                        )
                                          )    4:16-cv-371-BSM
    v.                                     )
                                          )    Judge Miller
DENTAL EQUITIES, LLC, d/b/a               )    Magistrate Judge Deen
PEER UNITED;                              )
FIRST ARKANSAS BANK & TRUST;              )
and JOHN DOES 1-10,                       )
                                          )
        Defendants.                        )

## MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE

### I.    INTRODUCTION

Proposed intervenors, Scoma Chiropractic, P.A., Dr. William P. Gress, and Florence

Mussat, M.D., S.C. (collectively, "Intervenors"), respectfully move to intervene pursuant to Fed.

R. Civ. P. 24(b) in this action, in order to move to stay or dismiss this case.  This case is entirely

duplicative of Intervenors' action, *Scoma Chiropractic, P.A. v. Dental Equities, LLC, et al.*

pending in the United States District Court for the Middle District of Florida, Case No.  2:16-cv-

00041-UA-MRM ("Scoma Action").  This case and the Scoma Action are based on identical

junk faxes and allege similar conduct, and seek identical damages on behalf of a similar class.

The Scoma Action was filed January 25, 2016, and has advanced much further.

Prior to joining the Scoma Action, there were 2 other cases pending arising out of alleged

unsolicited advertising faxes sent by or on behalf of Dental Equities, LLC and First Arkansas

Bank & Trust.  Plaintiff Florence Mussat, M.D., S.C. ("Mussat") filed its complaint against

Kianor Shahmohammadi on January 7, 2016 in the United States District Court for the Northern

1

District of Illinois, Case No. 16 C 171.  Plaintiff Dr. William P. Gress ("Gress") also filed a

similar lawsuit against Kianor Shahmohammadi, Card Assets, LLC and First Arkansas Bank &

Trust, in the United States District Court for the Northern District of Illinois, Case No. 16 C 1499

on January 28, 2016.  The Mussat, Scoma and Gress complaints attached copies of similarly

designed unsolicited advertising faxes.

On February 4, 2016, Mussat filed an MDL Petition, MDL No. 16-8, seeking transfer of

all cases to the United States District Court for the Northern District of Illinois.  The petition was

subsequently withdrawn by Mussat after briefing by Defendants First Arkansas Bank & Trust,

Dental Equities, LLC and Kianor Shahmohammadi.  While the petition was pending, Counsel for

Scoma, Gress and Mussat voluntarily agreed to cooperate and coordinate their litigation efforts.

"When feasible, such voluntary cooperation or coordination among the parties and the involved

courts is preferable to centralization." *In re Local Lighthouse Corp. Telephone Consumer*

*Protection Act (TCPA) Litig.*, No. MDL 2644, 118 F.Supp.2d 1379 (J.P.M.L Aug. 7, 2015)

*(citing In re Eli Lily & Co. (Cephalexin Monohydrate) Patent Litig.*, 446 F.Supp. 242, 244

(J.P.M.L. 1978) and Manual for Complex Litigation, Fourth, § 20.014 (2004)).

Both Gress and Mussat dismissed their complaints in the Northern District of Illinois

without prejudice and joined the Scoma Action as plaintiffs and putative class representatives on

April 29, 2016.

Counsel for Davis Neurology, P.A. has previously been contacted by one of the attorneys

representing the Intervenors regarding the existence of the pending Scoma Action, and was asked

to dismiss or stay the duplicative case but counsel declined to do so.

The Court should grant the motion to intervene because the motion is timely, the cases

share common questions of law and fact, the Scoma Action is more procedurally advanced than

2

this case, and neither Davis Neurology, P.A. nor any other party will suffer undue prejudice if intervention is allowed only to stay or dismiss this case in favor of the more advanced Scoma Action.

## II. THE SCOMA AND DAVIS NEUROLOGY ACTIONS

### A. The Scoma Action

The Scoma Action was filed on January 25, 2016,[1] alleging that defendant Dental Equities, LLC violated the Telephone Consumer Protection Act, as amended by the Junk Fax Prevention Act of 2005, 47 U.S.C. § 227 ("JFPA"), by sending unsolicited fax advertisements that did not contain a proper opt out notice. The complaint was amended on February 24, 2016, adding First Arkansas Bank & Trust as a defendant. The complaint was again amended on April 29, 2016, adding additional plaintiffs. (Appendix A - Scoma Second Amended Complaint) The junk faxes attached to the second amended complaint in the Scoma Action invite the recipients to apply for the Doctors Club MasterCard.

The Scoma Action has progressed significantly over the past several months. A case management order was entered on April 19, 2016, setting a November 1, 2017 discovery deadline. (Appendix B - Scoma Case Management Order) Discovery is also well under way in the Scoma Action. Depositions were taken in August, 2016 of Dental Equities, LLC's principal. Intervenors have issued written discovery and received responses back. Intervenors have also issued a third party subpoena and received responsive documents back from the fax broadcaster, which were examined by an expert. The expert's report was served the week of July 25, 2016. A protective order was entered on May 19, 2016.

An order of default has been entered against Dental Equities, LLC. The parties have

fully briefed First Arkansas Bank & Trust's motion to dismiss or in the alternative motion to stay the case.

Counsel for the Intervenors are experienced in handling junk fax class actions. Daniel A. Edelman has handled hundreds of JFPA/TCPA cases inside and outside of Illinois and has successfully recovered millions of dollars for classes he has represented.

**B.    Davis Neurology Action**

The Davis Neurology Action was filed on January 15, 2016, naming only Dental Equities, LLC and its principal, Kianor Shahmohammadi based on violations of the JFPA. First Arkansas Bank & Trust was not added as a defendant until May 12, 2016. On February 17, 2016, Davis Neurology voluntarily dismissed Kianor Shahmohammadi. First Arkansas Bank filed a notice of removal on June 14, 2016, after being served on May 18, 2016. First Arkansas Bank will file a responsive pleading on October 14, 2016. The Fed. R. Civ. P. 26(f) conference will occur by December 5, 2016 and the parties joint report is due on December 19, 2016.

In contrast to the Scoma Action, this action is still in the pleading stage and this Court has not issued a case management or scheduling order.

**III.    STANDARD OF REVIEW FOR PERMISSIVE INTERVENTION**

Fed. R. Civ. P. 24(b)(1)(B) provides, "On a timely motion, the court may permit anyone to intervene who: . . . (b) has a claim or defense that shares with the main action a common question of law or fact." The decision to allow permissive intervention is discretionary with consideration given to "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

The motion to intervene must state the grounds for intervention and be accompanied by a

---

[1] The Complaint in Scoma has been amended twice, most recently on April 29, 2016.

4

pleading that sets out the claim or defense for intervention.  Fed. R. Civ. P. 24(c).  A proposed

pleading is attached hereto as Appendix C.

### A.    Timeliness

"Whether a motion to intervene is timely is determined by considering all the

circumstances of the case."  *Mille Lacs Band of Chippewa Indians v. State of Minnesota*, 989

F.2d 994, 998 (8th Cir. 1993)  In assessing the timeliness of a motion to intervene, the court may

consider the following factors:

> (1)    how far the litigation had progressed at the time of the motion for
>          intervention,
>
> (2)    the prospective intervenor's prior knowledge of the pending action,
>
> (3)    the reason for the delay in seeking intervention, and
>
> (4)    the likelihood of prejudice to the parties in the action.

*U.S. v. Ritchie Special Credit Investments, Ltd.*, 620 F.3d 824, 832 (8th Cir. 2010), *quoting Minn.*

*Milk Producers Ass'n v. Glickman*, 153 F.3d 632, 646 (8th Cir. 1998).

This motion was timely filed.  This case was removed to federal court on June 14, 2016,

and this motion was filed approximately 3 months after the removal.

The Scoma Action was filed approximately 10 days after this case.  However, First

Arkansas Bank was added in the Scoma Action on February 24, 2016.  First Arkansas Bank was

not added in this case until May 12, 2016, almost 3 months later.  Since First Arkansas Bank is

the only substantial (and active) defendant in the case, the Scoma Action is the filed-filed case

against First Arkansas Bank.  Further, the Scoma Action is procedurally more advanced.  The

first-filed rule is "usually disregarded when the competing suits were filed merely days apart."

*Ontel Products, Inc. v. Project Strategies Corp.*, 899 F.Supp. 1144, 1153 (S.D.N.Y. 1995).  The

parties in the Scoma Action have been actively litigating the case for months, *supra*, while this case has not advanced and the parties are still in the pleading stage.

Intervenors have not delayed in moving to intervene. At the time the Intervenors, First Arkansas Bank & Trust, and Dental Equities, LLC were briefing the MDL petition, they became aware of the existence of this action which was pending in Arkansas state court. Counsel for Davis Neurology was notified of the pendency of the Scoma Action prior to the filing of this motion and has refused to take any action to stay or dismiss this case. Once this case was removed to federal court, Intervenors acted promptly by filing this motion approximately three months thereafter and before any substantive proceedings have occurred. *Mille Lacs Band of Chippewa Indians v. State of Minnesota*, 989 F.2d 994, 999 (8th Cir. 1993) (Motion to intervene filed 18 months after complaint was filed was not untimely where there was little activity in the case).

"The principal consideration in ruling on a Rule 24(b) motion is whether the proposed intervention would unduly delay or prejudice the adjudication of the parties' rights." *South Dakota ex rel. Barnett v. U.S. Dept. Of Interior*, 317 F.3d 783, 787 (8th Cir. 2003). There is no possible prejudice to Davis Neurology or anyone else if Intervenors are allowed to intervene. This case is in its early stages and First Arkansas Bank & Trust is due to file a responsive pleading to the complaint on October 14, 2016. The court's electronic docket shows an initial scheduling conference is set for December 5, 2016 and otherwise reflects no substantive activity. Accordingly, Intervenor's motion is timely and will not prejudice Davis Neurology or any other party.

On the other hand, Intervenors would be prejudiced if they were not able to proceed with their advanced case. The Intervenors have already conducted written discovery and taken

6

depositions and served expert reports.  There has also been extensive motion practice.  In sum, the Intervenors' motion is timely.

**B.**     **Common Questions of Law and Fact**

There is no dispute that the Scoma Action shares common questions or law and fact with this case.  The party defendants are identical in both actions.  In fact, months after First Arkansas Bank & Trust was named as a defendant in the Scoma Action, Davis Neurology amended its complaint to add First Arkansas Bank & Trust as a defendant.  The second amended complaint in this case is now essentially identical to the further advanced Scoma Action. The complaints in both cases are based on identical junk faxes and the underlying facts are the same in that the Intervenors and Davis Neurology were all sent unsolicited fax advertisements with non-compliant opt out notices. Indeed, all of the junk faxes appear to have been sent as part of the same fax broadcast on December 18-23, 2016.

The fact that the amended complaint in Davis Neurology also alleges a state law conversion claim does not alter the conclusion.  "As long as the underlying facts are the same, as is the case here, the fact that the two complaints allege violations of different state laws is not enough to render them substantially dissimilar for purposes of the first-to-file analysis." *Askin v. Quaker Oats Co.*, 11 C 111, 2011 WL 5008524, at *4 (N.D. Ill. Feb. 15, 2012). Clearly, the same set of facts used to prove the TCPA/JFPA claim will be used to prove the conversion claim in this case.

Finally, the putative classes in both cases are substantially similar and overlap.  The Scoma Action alleges a class of the following persons:

> All persons who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability of quality of any property, goods, or services by or on behalf of Defendants, and (3) which

7

Defendants did not have prior express permission or invitation, or (4) which did not display a proper opt-out notice.

A motion for class certification is already filed and pending in the Scoma Action.

> This action has alleged a class of the following persons:
> All persons, natural or otherwise, in the United States and its territories who received one or more unsolicited facsimile transmissions from Defendants advertising goods or services for a commercial purpose with content substantially similar to that contained in Exhibit A during the period from January 15, 2012 through the present.

There is no motion for class certification pending in this case.

In sum, the legal issues and factual questions in the two cases overlap.

## C. **Davis Neurology Will Not Be Prejudiced By a Stay or Dismissal**

Finally, there is no possible prejudice to Davis Neurology or anyone else if the motion to intervene is granted and this case is dismissed or stayed. "Although the adequacy of protection is only a minor variable in the Rule 24(b) decision calculus, it is not an illegitimate consideration." *South Dakota ex rel Barnett v. U.S. Dept. Of Interior*, 317 F.3d 783, 787 (8th Cir. 2003). Davis Neurology will suffer no prejudice because if the Intervenors motion to stay is granted, Davis Neurology's rights would be protected in the Scoma Action. Davis Neurology is of course, free to opt out of any class certified in the Scoma Action. In sum, Davis Neurology will not be prejudiced by a stay.

## IV. CONCLUSION

Intervenors respectfully request that this Court permit them leave to intervene and move to stay or dismiss this action.

Respectfully submitted,

Robert R. Cloar

8

Robert R. Cloar
AR Bar ID: 72025
P.O. Box 1623
Fort Smith, AR 72902
rrcloar@gmail.com
(479) 783-1186

Daniel A. Edelman
EDELMAN COMBS LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, IL 60603
(312) 739-4200
*Application for Pro Hac Vice Pending*

*Attorneys for Proposed Intervenors*

## CERTIFICATE OF SERVICE

I, Robert Cloar, hereby certify that on September 2 5, 2016, a true and correct copy of

the foregoing document, was filed via the Court's CM/ECF system which caused notice to be

sent to the following parties:

James A. Streett
Alex G. Streett
Streett Law Firm, P.A.
107 West Main
Russellville, AR 72801
james@streettlaw.com

Gary D. Marts, Jr.
Jaimie Grunert Moss
Patrick Darrow Wilson
Wright, Lindsey & Jennings
200 West Capitol Ave., Ste. 2300
Little Rock, AR 72201
gmarts@wlj.com
jmoss@wlj.com
pwilson@wlj.com

Joe P. Leniski
Branstetter, Stranch & Jennings PLLC
223 Rosa L. Parks Ave., Ste. 200
Nashville, TN 37204
jleniski@branstetterlaw.com

Lewis S. Wiener
Sutherland Asbill & Brennan LLP
700 Sixth Street NW, Suite 700
Washington, D.C. 20001
lewis.wiener@sutherland.com

Robert R. Cloar
AR Bar ID: 72025
P.O. Box 1623
Fort Smith, AR 72902
rrcloar@gmail.com
*Attorney for Proposed Intervenors*

# APPENDIX A

## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| SCOMA CHIROPRACTIC, P.A. a Florida corporation, FLORENCE MUSSAT, M.D., S.C., an Illinois service corporation, and DR. WILLIAM P. GRESS, an Illinois resident, individually and as the representatives of a class of similarly-situated persons, ) ) ) ) ) ) ) | Civil No. 2:16-cv-00041-UA-MRM |
| Plaintiffs, ) ) | **CLASS ACTION** |
| ) | |
| v. ) | |
| ) | |
| DENTAL EQUITIES, LLC, FIRST ARKANSAS BANK & TRUST and JOHN DOES 1-10, ) ) ) | |
| ) | |
| Defendants. ) ) | |

FILED

4/29/16

Date                    Time

CLERK, U. S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS, FLORIDA

Initials

### SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiffs, SCOMA CHIROPRACTIC, P.A., FLORENCE MUSSAT, M.D., S.C. and DR.

WILLIAM P. GRESS ("Plaintiffs"), bring this action on behalf of themselves and all others

similarly situated, through their attorneys, and except as to those allegations pertaining to

Plaintiffs or their attorneys, which allegations are based upon personal knowledge, allege the

following upon information and belief against Defendants, DENTAL EQUITIES, LLC, FIRST

ARKANSAS BANK & TRUST and JOHN DOES 1-10 ("Defendants"):

### PRELIMINARY STATEMENT

1.     This case challenges Defendants' practice of sending unsolicited facsimiles.

2.     The federal Telephone Consumer Protection Act of 1991, as amended by the Junk

Fax Prevention Act of 2005, 47 USC § 227 ("JFPA" or the "Act"), and the regulations

promulgated under the Act, prohibit a person or entity from faxing or having an agent fax

advertisements without the recipient's prior express invitation or permission. The JFPA provides

a private right of action and provides statutory damages of $500 per violation. Upon information and belief, Defendants have sent facsimile transmissions of unsolicited advertisements to Plaintiffs and the Class in violation of the JFPA, including, but not limited to, the facsimile transmission of unsolicited advertisements on or about December 18-23, 2015 ("the Faxes"), the true and correct copies of which are attached hereto as Exhibit A, B and C, and made a part hereof. The Faxes describe the commercial availability or quality of Defendants' products, goods and services. Plaintiffs are informed and believe, and upon such information and belief aver, that Defendants have sent, and continue to send, unsolicited advertisements via facsimile transmission in violation of the JFPA.

3.      Unsolicited faxes damage their recipients. A junk fax recipient loses the use of its fax machine, paper, and ink toner. An unsolicited fax wastes the recipient's valuable time that would have been spent on something else. A junk fax interrupts the recipient's privacy. Unsolicited faxes prevent fax machines from receiving authorized faxes, prevent their use for authorized outgoing faxes, cause undue wear and tear on the recipients' fax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited message.

4.      On behalf of themselves and all others similarly situated, Plaintiffs bring this case as a class action asserting claims against Defendants under the JFPA.

5.      Plaintiffs are informed and believe, and upon such information and belief aver, that this action is based upon a common nucleus of operative facts because the facsimile transmissions at issue were and are being done in the same or similar manner. This action is based on the same legal theory, namely liability under the JFPA. This action seeks relief expressly authorized by the JFPA: (i) injunctive relief enjoining Defendants, their employees, agents, representatives, contractors, affiliates, and all persons and entities acting in concert with

them, from sending unsolicited advertisements in violation of the JFPA; and (ii) an award of statutory damages in the minimum amount of $500 for each violation of the JFPA, and to have such damages trebled, as provided by §227(b)(3) of the Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

7.      This court has personal jurisdiction over Defendants because Defendants transact business within this judicial district, have made contacts within this judicial district, and/or have committed tortious acts within this judicial district.

## PARTIES

8.      Plaintiff, SCOMA CHIROPRACTIC, P.A. ("SCOMA"), is a Florida corporation located in Cape Coral, Florida.

9.      Plaintiff, FLORENCE MUSSAT, M.D., S.C. ("MUSSAT"), is an Illinois service corporation.

10.     Plaintiff, DR. WILLIAM P. GRESS ("GRESS"), is an Illinois individual.

11.     On information and belief, Defendant, DENTAL EQUITIES, LLC, is a Nevada limited liability company with its principal place of business in Irvine, California. DoctorsClub is a registered trademark of Dental Equities, LLC offering financial services, namely, issuing credit cards and debit cards, and providing credit card and debit card services.

12.     On information and belief, Defendant, FIRST ARKANSAS BANK & TRUST ("FIRST ARKANSAS"), is an Arkansas state bank and is located at 600 Main St., Jacksonville, Arkansas. FIRST ARKANSAS, through Card Assets, serves as a credit card issuer to over 400 financial institutions across the United States. Card Assets allows financial institutions and

3

business organizations to issue branded consumer and small business credit cards.  Card Assets is a division of First Arkansas Bank & Trust.

13.     John Does 1-10 will be identified through discovery, but are not presently known.

## FACTS

14.     On information and belief, on or about December 23, 2015, Defendants transmitted by telephone facsimile machine an unsolicited facsimile to Plaintiff SCOMA.  A copy of the facsimile is attached hereto as Exhibit A.

15.     On information and belief, on or about December 18, 2015, Defendants transmitted by telephone facsimile machine an unsolicited facsimile to Plaintiff MUSSAT.  A copy of the facsimile is attached hereto as Exhibit B.

16.     On information and belief, on or about December 22, 2015, Defendants transmitted by telephone facsimile machine an unsolicited facsimile to Plaintiff GRESS.  A copy of the facsimile is attached hereto as Exhibit C.

17.     On information and belief, Defendants receive some or all of the revenues from the sale of the products, goods and services advertised on Exhibits A, B and C, and Defendants profit and benefit from the sale of the products, goods and services advertised on Exhibits A, B and C.

18.     In order to obtain the DoctorsClub MasterCard credit card that is advertised in Exhibits A, B, and C, a person needs to complete an application and agree to the terms and conditions provided by Defendant First Arkansas Bank & Trust.

19.     Plaintiffs had not invited or given permission to Defendants to send the faxes.

20.     On information and belief, Defendants faxed the same and other unsolicited facsimiles without the required opt-out language to Plaintiffs and more than 25 other recipients

4

or sent the same and other advertisements by fax with the required opt-out language but without

first receiving the recipients' express permission or invitation.

21.    There is no reasonable means for Plaintiffs (or any other class member) to avoid

receiving unauthorized faxes. Fax machines are left on and ready to receive the urgent

communications their owners desire to receive.

22.    Defendants' facsimiles attached as Exhibits A, B and C did not display a proper

opt-out notice as required by 47 C.F.R. § 64.1200.

### CLASS ACTION ALLEGATIONS

23.    In accordance with Fed. R. Civ. P. 23(b)(1), (b)(2) and (b)(3), Plaintiffs bring this

class action pursuant to the JFPA, on behalf of the following class of persons:

> All persons who (1) on or after four years prior to the filing of this
> action, (2) were sent telephone facsimile messages of material
> advertising the commercial availability or quality of any property,
> goods, or services by or on behalf of Defendants, and (3) which
> Defendants did not have prior express permission or invitation, or
> (4) which did not display a proper opt-out notice.

Excluded from the Class are the Defendants, their employees, agents and members of the

Judiciary. Plaintiffs reserve the right to amend the class definition upon completion of class

certification discovery.

24.    Class Size (Fed. R. Civ. P. 23(a)(1)): Plaintiffs are informed and believe, and

upon such information and belief aver, that the number of persons and entities of the Plaintiffs

Class is numerous and joinder of all members is impracticable. Plaintiffs are informed and

believe, and upon such information and belief aver, that the number of class members is at least

forty.

5

25.   <u>Commonality (Fed. R. Civ. P. 23 (a)(2))</u>:   Common questions of law and fact apply to the claims of all class members. Common material questions of fact and law include, but are not limited to, the following:

(a)      Whether the Defendants sent unsolicited fax advertisements;

(b)      Whether the Defendants' faxes advertised the commercial availability or quality of property, goods, or services;

(c)      The manner and method the Defendants used to compile or obtain the list of fax numbers to which they sent Exhibits A, B and C other unsolicited faxed advertisements or other advertisements without the required opt-out language;

(d)      Whether the Defendants faxed advertisements without first obtaining the recipient's prior permission or invitation;

(e)      Whether the Defendants sent the faxed advertisements knowingly;

(f)      Whether the Defendants violated the provisions of 47 U.S.C. § 227 and the regulations promulgated thereunder;

(g)      Whether the faxes contain an "opt-out notice" that complies with the requirements of § (b)(1)(C)(iii) of the Act, and the regulations promulgated thereunder, and the effect of the failure to comply with such requirements;

(h)      Whether the Defendants should be enjoined from faxing advertisements in the future;

(i)      Whether the Plaintiffs and the other members of the class are entitled to statutory damages; and

(j)      Whether the Court should award treble damages.

26.  <u>Typicality (Fed. R. Civ. P. 23 (a)(3))</u>:  The Plaintiffs' claims are typical of the claims of all class members. The Plaintiffs received the same faxes as the faxes sent by or on behalf of the Defendants advertising products, goods and services of the Defendants during the Class Period. The Plaintiffs are making the same claims and seeking the same relief for themselves and all class members based upon the same federal statute. The Defendants have acted in the same or in a similar manner with respect to the Plaintiffs and all the class members by sending Plaintiffs and each member of the class the same faxes.

27.  <u>Fair and Adequate Representation (Fed. R. Civ. P. 23 (a)(4))</u>:  The Plaintiffs will fairly and adequately represent and protect the interests of the class. They are interested in this matter, has no conflicts and has retained experienced class counsel to represent the class.

28.  <u>Need for Consistent Standards and Practical Effect of Adjudication (Fed. R. Civ. P. 23 (b) (1))</u>:  Class certification is appropriate because the prosecution of individual actions by class members would: (a) create the risk of inconsistent adjudications that could establish incompatible standards of conduct for the Defendants, and/or (b) as a practical matter, adjudication of the Plaintiffs' claims will be dispositive of the interests of class members who are not parties.

29.  <u>Common Conduct (Fed. R. Civ. P. 23 (b)(2))</u>:  Class certification is also appropriate because the Defendants have acted and refused to act in the same or similar manner with respect to all class members thereby making injunctive and declaratory relief appropriate. The Plaintiffs demand such relief as authorized by 47 U.S.C. §227.

30.  <u>Predominance and Superiority (Fed. R. Civ. P. 23 (b)(3))</u>:  Common questions of law and fact predominate over any questions affecting only individual members, and a class

7

action is superior to other methods for the fair and efficient adjudication of the controversy because:

(a)    Proof of the claims of the Plaintiffs will also prove the claims of the class without the need for separate or individualized proceedings;

(b)    Evidence regarding defenses or any exceptions to liability that the Defendants may assert and attempt to prove will come from the Defendants' records and will not require individualized or separate inquiries or proceedings;

(c)    The Defendants have acted and are continuing to act pursuant to common policies or practices in the same or similar manner with respect to all class members;

(d)    The amount likely to be recovered by individual class members does not support individual litigation. A class action will permit a large number of relatively small claims involving virtually identical facts and legal issues to be resolved efficiently in one (1) proceeding based upon common proofs; and

(e)    This case is inherently manageable as a class action in that:

(i)    The Defendants identified persons to receive the fax transmissions and it is believed that the Defendants' and Defendants' agents' computers and business records will enable the Plaintiffs to readily identify class members and establish liability and damages;

(ii)    Liability and damages can be established for the Plaintiffs and the class with the same common proofs;

(iii)    Statutory damages are provided for in the statute and are the same for all class members and can be calculated in the same or a similar manner;

8

(iv)    A class action will result in an orderly and expeditious administration of claims and it will foster economics of time, effort and expense;

(v)    A class action will contribute to uniformity of decisions concerning the Defendants' practices; and

(vi)    As a practical matter, the claims of the class are likely to go unaddressed absent class certification.

**Claim for Relief for Violation of the JFPA, 47 U.S.C. § 227 *et seq.***

31.    The JFPA makes it unlawful for any person to "use any telephone facsimile machine, computer or other device to send, to a telephone facsimile machine, an unsolicited advertisement . . . ." 47 U.S.C. § 227(b)(1)(C).

32.    The JFPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227 (a) (5).

33.    **Opt-Out Notice Requirements.** The JFPA strengthened the prohibitions against the sending of unsolicited advertisements by requiring, in § (b)(1)(C)(iii) of the Act, that senders of faxed advertisements place a clear and conspicuous notice on the first page of the transmission that contains the following among other things (hereinafter collectively the "Opt-Out Notice Requirements"):

(a)    a statement that the recipient is legally entitled to opt-out of receiving future faxed advertisements – knowing that he or she has the legal right to request an opt-out gives impetus for recipients to make such a request, if desired;

9

> (b)      a statement that the sender must honor a recipient's opt-out request within 30 days and the sender's failure to do so is unlawful – thereby encouraging recipients to opt-out, if they did not want future faxes, by advising them that their opt-out requests will have legal "teeth";
>
> (c)      a statement advising the recipient that he or she may opt-out with respect to all of his or her facsimile telephone numbers and not just the ones that receive a faxed advertisement from the sender – thereby instructing a recipient on how to make a valid opt-out request for all of his or her fax machines.

The requirement of paragraph (a) above is incorporated from § (b)(D)(ii) of the Act. The requirement of paragraph (b) above is incorporated from § (b)(D)(ii) of the Act and the rules and regulations of the Federal Communications Commission (the "FCC") in ¶ 31 of its 2006 Report and Order (*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act, Junk Prevention Act of 2005,* 21 F.C.C.R. 3787, 2006 WL 901720, which rules and regulations took effect on August 1, 2006). The requirements of paragraph (c) above are contained in § (b)(2)(E) of the Act and incorporated into the Opt-Out Notice Requirements via § (b)(2)(D)(ii). Compliance with the Opt-Out Notice Requirements is neither difficult nor costly. The Opt-Out Notice Requirements are important consumer protections bestowed by Congress upon the owners of the telephone lines and fax machines giving them the right, and means, to stop unwanted faxed advertisements.

34.      **2006 FCC Report and Order.** The JFPA, in § (b)(2) of the Act, directed the FCC to implement regulations regarding the JFPA, including the JFPA's Opt-Out Notice Requirements and the FCC did so in its 2006 Report and Order, which in addition provides among other things:

(a)      The definition of, and the requirements for, an established business relationship for purposes of the first of the three prongs of an exemption to liability under § (b)(1)(C)(i) of the Act and provides that the lack of an "established business relationship" precludes the ability to invoke the exemption contained in § (b)(1)(C) of the Act (*See* 2006 Report and Order ¶¶ 8-12 and 17-20);

(b)      The required means by which a recipient's facsimile telephone number must be obtained for purposes of the second of the three prongs of the exemption under § (b)(1)(C)(ii) of the Act and provides that the failure to comply with these requirements precludes the ability to invoke the exemption contained in § (b)(1)(C) of the Act (*See* 2006 Report and Order ¶¶ 13-16);

(c)      The things that must be done in order to comply with the Opt-Out Notice Requirements for the purposes of the third of the three prongs of the exemption under § (b)(1)(C)(iii) of the Act and provides that the failure to comply with these requirements precludes the ability to invoke the exemption contained in § (b)(1)(C) of the Act (*See* 2006 Report and Order ¶¶ 24-34);

(d)      The failure of a sender to comply with the Opt-Out Notice Requirements precludes the sender from claiming that a recipient gave "prior express permission or invitation" to receive the sender's fax (*See* Report and Order ¶ 48);

As a result thereof, a sender of a faxed advertisement who fails to comply with the Opt-Out Notice Requirements has, by definition, transmitted an unsolicited advertisement under the JFPA. This is because such a sender can neither claim that the recipients of the faxed advertisement gave "prior express permission or invitation" to receive the fax nor can the sender claim the exemption from liability contained in § (b)(C)(1) of the Act.

11

35.     **The Faxes.** Defendants sent on or about December 18-23, 2015, advertisements via facsimile transmission from telephone facsimile machines, computers, or other devices to the telephone lines and facsimile machines of Plaintiffs and members of the Plaintiffs Class. The Faxes constituted advertisements under the Act. Defendants failed to comply with the Opt-Out Requirements in connection with the Faxes. The Faxes were transmitted to persons or entities without their prior express permission or invitation and/or Defendants are precluded from asserting any prior express permission or invitation or that Defendants had an established business relationship with Plaintiffs and other members of the class, because of the failure to comply with the Opt-Out Notice Requirements. By virtue thereof, Defendants violated the JFPA and the regulations promulgated thereunder by sending the Faxes via facsimile transmission to Plaintiffs and members of the Class.

36.     **Defendants' Other Violations.** Plaintiffs are informed and believe, and upon such information and belief aver, that during the period preceding four years of the filing of this Complaint and repeatedly thereafter, Defendants have sent via facsimile transmission from telephone facsimile machines, computers, or other devices to telephone facsimile machines of members of the Plaintiffs Class other faxes that constitute advertisements under the JFPA that were transmitted to persons or entities without their prior express permission or invitation (and/or that Defendants are precluded from asserting any prior express permission or invitation or that Defendants had an established business relationship because of the failure to comply with the Opt-Out Notice Requirements in connection with such transmissions). By virtue thereof, Defendants violated the JFPA and the regulations promulgated thereunder. Plaintiffs are informed and believe, and upon such information and belief aver, that Defendants may be continuing to send unsolicited advertisements via facsimile transmission in violation of the JFPA

12

and the regulations promulgated thereunder, and absent intervention by this Court, will do so in the future.

37.    The TCPA/JFPA provides a private right of action to bring this action on behalf of Plaintiffs and the Plaintiffs Class to redress Defendants' violations of the Act, and provides for statutory damages. 47 U.S.C. § 227(b)(3). The Act also provides that injunctive relief is appropriate. *Id.*

38.    The JFPA is a strict liability statute, so the Defendants are liable to the Plaintiffs and the other class members even if their actions were only negligent.

39.    The Defendants knew or should have known that (a) the Plaintiffs and the other class members had not given express invitation or permission for the Defendants or anybody else to fax advertisements about the Defendants' products, goods or services; (b) the Plaintiffs and the other class members did not have an established business relationship; (c) Defendants transmitted advertisements;  (d) the Faxes did not contain the required Opt-Out Notice; and (e) Defendants' transmission of advertisements that did not contain the required opt-out notice was unlawful.

40.    The Defendants' actions caused damages to the Plaintiffs and the other class members. Receiving the Defendants' junk faxes caused the recipients to lose paper and toner consumed in the printing of the Defendants' faxes. Moreover, the Defendants' faxes used the Plaintiffs' and the other class members' telephone lines and fax machine. The Defendants' faxes cost the Plaintiffs and the other class members time, as the Plaintiffs and the other class members and their employees wasted their time receiving, reviewing and routing the Defendants' unauthorized faxes. That time otherwise would have been spent on the Plaintiffs' and the other

13

class members' business activities. The Defendants' faxes unlawfully interrupted the Plaintiffs' and other class members' privacy interests in being left alone.

WHEREFORE, Plaintiffs, SCOMA CHIROPRACTIC, P.A., FLORENCE MUSSAT, M.D., S.C. and DR. WILLIAM P. GRESS, individually and on behalf of all others similarly situated, demand judgment in their favor and against Defendants, DENTAL EQUITIES, LLC, FIRST ARKANSAS BANK & TRUST and JOHN DOES 1-10, jointly and severally, as follows:

A.      That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint the Plaintiffs as the representative of the class, and appoint the Plaintiffs' counsel as counsel for the class;

B.      That the Court award actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater;

C.      That Court enjoin the Defendants from additional violations; and

D.      That the Court award pre-judgment interest, costs, and such further relief as the Court may deem just and proper.

Respectfully submitted,

SCOMA CHIROPRACTIC, P.A., FLORENCE MUSSAT, M.D., S.C., and DR. WILLIAM P. GRESS, individually and as the representatives of a class of similarly-situated persons,

By:     s/Ryan M. Kelly
        Ryan M. Kelly
        FL Bar No. 90110
        **ANDERSON + WANCA**
        3701 Algonquin Road, Suite 500
        Rolling Meadows, IL 60008
        Telephone: 847-368-1500
        Fax: 847-368-1501
        Email: rkelly@andersonwanca.com

14

# EXHIBIT A



# Doctors**Club**®

As your colleagues, we want to wish you a *Happy Holiday* and to inform you that the Doctors Club is finally here!



Doctors Club is about empowering the healthcare community without borders in a 3 pronged approach: Administration, Academics, and Finance. One of the benefits of Doctors Club is its member Identification credit card exclusively created for Healthcare Providers. The prestigious credit card is attached to a unique world of unprecedented discounts and benefits catering to our personal and business needs.

Be the first to *Pre-Order* the Exclusive Doctors Club World Elite MasterCard!

**Your New Card Includes:**

- Access discounts and perks for your business and personal use with over 5,000 vendors and hundreds of thousands of offers
- Travel and vacation deals in more than 200 countries with over 100,000 hotel choices
- Local, Regional, National and Universal Privileges

**Also, Enjoy the Additional MasterCard Benefits:**

- Robust Reward Program with options for Cashback and Points redeemable for merchandise, gift cards, and travel*
- World Elite Concierge Services**
- Emergency Card Replacement
- MasterCard Identity Theft Resolution
- Master Rental Coverage
- Chauffeured Car Service**
- Lost and Delayed Baggage Insurance
- Purchase Protections
- Extended Warranties
- Luxury Travel Program**

*Redemption of points for travel are subject to a ticketing fee of $35 online or $35/phone
**Additional terms and conditions apply. Services provide are subject to third party fees.

## The Only Credit Card that was Designed BY DOCTORS FOR DOCTORS.

*It Pays to Unite!*

For more information and complete terms and conditions or to APPLY, visit **TheDrClub.com** today!

Recipient may Opt Out of any future faxes by emailing a request to OptOut@TheDrClub.com or by calling 940.202.1777

# EXHIBIT B

Fa:Nexus   To: 17738683780                                    12:31 12/18/15 GMT-05 Pg 1-1



# DoctorsClub®

As your colleagues, we want to wish you a *Happy Holiday*
and to inform you that the Doctors Club is finally here!



Doctors Club is about empowering the healthcare community without borders in a 3 pronged
approach: Administration, Academics, and Finance. One of the benefits of Doctors Club
is its member identification credit card exclusively created for Healthcare Providers.
The prestigious credit card is attached to a unique world of unprecedented discounts
and benefits catering to our personal and business needs.

Be the first to *Pre-Order* the Exclusive Doctors Club World Elite MasterCard!

### Your New Card Includes:

- Access discounts and perks for your business and personal use with over 5,000 vendors and hundreds of thousands of offers.
- Travel and vacation deals to more than 200 countries with over 100,000 hotel choices.
- Local, Regional, National and Universal Privileges

### Also, Enjoy the Additional MasterCard Benefits:

- Robust Reward Program with options for Cashback and Points redeemable for merchandise, gift cards, and travel*
- World Elite Concierge Services**
- Emergency Card Replacement
- MasterCard Identity Theft Resolution
- Master Rental Coverage
- Chauffeured Car Service**
- Lost and Delayed Baggage Insurance
- Purchase Protections
- Extended Warrantee
- Luxury Travel Program**

*Redemption of points for travel are subject to a ticketing fee of $31/online or $36/phone.
**Additional terms and conditions apply. Services provide are subject to third party fees.

## The Only Credit Card that was Designed BY DOCTORS FOR DOCTORS.

## *It Pays to Unite!*

For more information and complete terms and conditions
or to APPLY, visit **TheDrClub.com** today!

# EXHIBIT C



# Doctors**Club**®

As your colleagues, we want to wish you a *Happy Holiday*
and to inform you that the Doctors Club is finally here!



Doctors Club is about empowering the healthcare community without borders in a 3 pronged
approach: Administration, Academics, and Finance. One of the benefits of Doctors Club
is its member identification credit card exclusively created for Healthcare Providers.
The prestigious credit card is attached to a unique world of unprecedented discounts
and benefits catering to our personal and business needs.

Be the first to *Pre-Order* the Exclusive Doctors Club World Elite MasterCard!

**Your New Card Includes:**

- Access discounts and perks for your business and personal use with over 5,000 vendors and hundreds of thousands of offers
- Travel and vacation deals to more than 200 countries with over 100,000 hotel choices
- Local, Regional, National and Universal Privileges

**Also, Enjoy the Additional MasterCard Benefits:**

- Robust Reward Program with options for Cashback and Points redeemable for merchandise, gift cards, and travel*
- World Elite Concierge Services**
- Emergency Card Replacement
- MasterCard Identity Theft Resolution
- Master Rental Coverage
- Chauffeured Car Service**
- Lost and Delayed Baggage Insurance
- Purchase Protections
- Extended Warranties
- Luxury Travel Program**

*Redemption of points for travel are subject to a ticketing fee of $33 online or $35/phone
**Additional terms and conditions apply. Services provide are subject to third party fees.

## The Only Credit Card that was Designed BY DOCTORS FOR DOCTORS.

### It Pays to Unite!

For more information and complete terms and conditions
or to APPLY, visit **TheDrClub.com** today!

Recipient may OptOut of any future faxes by emailing a request to OptOut@TheDrClub.com or by calling 949.202.1777

# **APPENDIX B**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SCOMA CHIROPRACTIC, P.A., a
Florida corporation, individually and as
the representative of a class of similarly-
situated persons

EXHIBIT 7
Appdx B

          Plaintiff,

v.                                              Case No:  2:16-cv-41-FtM-99MRM

DENTAL EQUITIES, LLC, JOHN
DOES (1-10) and FIRST ARKANSAS
BANK & TRUST,

          Defendants.
_____/

## CASE MANAGEMENT AND SCHEDULING ORDER

Having considered the Case Management Report prepared by the parties, see Fed. R. Civ.

P. 26(f) and M.D. Fla. R. 3.05(c), the Court enters this case management and scheduling order:

| | |
|---|---|
| **Mandatory Initial Disclosures (pursuant to Fed. R. Civ. P. 26(a)(1) as amended)** | **June 8, 2016** |
| **Certificate of Interested Persons and Corporate Disclosure Statement** | **IMMEDIATELY** |
| **Motions to Add Parties or to Amend Pleadings** | **June 29, 2016** |
| **Disclosure of Expert Reports**          **Plaintiff:** **Defendant:** **Rebuttal:** | **March 22, 2017** **April 21, 2017** |
| **Discovery Deadline** | **November 1, 2017** |

| | | |
|---|---|---|
| Mediation | Deadline:<br>Mediator:<br>Address:<br><br><br>Telephone: | DECEMBER 4, 2017<br>Jay M. Cohen<br>981 Mayfield Avenue<br>Winter Park, FL<br><br>407-644-1181 |
| **IF NO MEDIATOR IS DESIGNATED HEREIN:** The parties shall file a stipulation selecting a mediator within fourteen (14) days of the date of this Order | | |
| Dispositive Motions, *Daubert*, and *Markman* Motions | | December 12, 2017 |
| Meeting *In Person* to Prepare Joint Final Pretrial Statement | | February 22, 2018 |
| Joint Final Pretrial Statement (Including a Single Set of Jointly Proposed Jury Instructions and Verdict Form (a Word version should also be e-mailed to the Chambers e-mail address listed on the Court's website), Voir Dire Questions, Witnesses Lists, and Exhibit Lists on Approved Form found on the Court's website) | | March 16, 2018 |
| All Other Motions Including Motions *In Limine*, Trial Briefs (Bench Trials only) | | March 16, 2018 |
| Final Pretrial Conference | Date:<br>Time:<br>Judge: | April 16, 2018<br>9:00 AM<br>JOHN E. STEELE |
| Trial Term Begins [Trials Before Magistrate Judges Begin on Date Certain] | | MAY 7, 2018 |
| Estimated Length of Trial | | 5 days |
| Jury/Non Jury | | Non-Jury |

The purpose of this order is to discourage wasteful pretrial activities, and to secure the just, speedy, and inexpensive determination of the action. *See* Fed. R. Civ. P. 1; M.D. Fla. R. 1.01(b). This order controls the subsequent course of this proceeding. Fed. R. Civ. P. 16(b), (e). Counsel and all parties (both represented and *pro se*) shall comply with this order, with the Federal Rules of Civil Procedure, and with the Local Rules of the United States District Court for the Middle District of Florida. Counsel shall also comply with the Ideals and Goals of Professionalism adopted by the Board of Governors of the Florida Bar on May 16, 1990.

*See* 73 Florida Bar Journal 711- 13 (September 1999); M.D. Fla. R. 2.04(g).

**I.    DISCOVERY**

**A.    Certificate of Interested Persons and Corporate Disclosure Statement** – This Court has previously ordered each party, governmental party, intervenor, non-party movant, and Rule 69 garnishee to file and serve a Certificate of Interested Persons and Corporate Disclosure Statement using a mandatory form. No party may seek discovery from any source before filing and serving a Certificate of Interested Persons and

2

Corporate Disclosure Statement. A motion, memorandum, response, or other paper – including emergency motion – may be denied or stricken unless the filing party has previously filed and served its Certificate of Interested Persons and Corporate Disclosure Statement. Any party who has not already filed and served the required certificate shall do so within **fourteen (14)** days of the date of this order or sanctions will be imposed.

B.     **Discovery Not Filed** – The parties shall not file discovery materials with the Clerk except as provided in M.D. Fla. R. 3.03.

C.     **Limits on Discovery** – The parties may agree by stipulation on other limits on discovery within the context of the limits and deadlines established by this case management and scheduling order, but the parties may not alter the terms of this order without leave of Court. Fed. R. Civ. P. 29.

D.     **Discovery Deadline** – Each party shall timely serve discovery requests so that the rules allow for a response prior to the discovery deadline. The Court may deny as untimely all motions to compel filed after the discovery deadline.

E.     **Disclosure of Expert Testimony** – On or before the date set forth in the above table for the disclosure of expert reports, the party shall fully comply with Fed. R. Civ. P. 26(a)(2) and 26(e). Expert testimony on direct examination at trial will be limited to the opinions, basis, reasons, data, and other information disclosed in the written expert report disclosed pursuant to this order. Failure to disclose such information may result in the exclusion of all or part of the testimony of the expert witness.

F.     **Confidentiality Agreements** – The parties may reach their own agreement regarding the designation of materials as "confidential." There is no need for the Court to endorse the confidentiality agreement. The Court discourages unnecessary stipulated motions for a protective order. The Court will enforce stipulated and signed confidentiality agreements. *See* M.D. Fla. R. 4.15. Each confidentiality agreement or order shall provide, or shall be

deemed to provide, that "no party shall file a document under seal without first having obtained an order granting leave to file under seal on a showing of particularized need." *See also* "Motions to File Under Seal" below.

II.    **MOTIONS**

A.     **Certificate of Good Faith Conference** – *Before filing any motion in a civil case, the moving party shall confer with counsel for the opposing party in a good faith effort to resolve the issues raised by the motion, and shall file with the motion a statement certifying that the moving party has conferred with opposing counsel, and that counsel have been unable to agree on the resolution of the motion.* M.D. Fla. R. 3.01(g); Fed. R. Civ. P. 26(c). No certificate is required in a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, or to involuntarily dismiss an action. M.D. Fla. R. 3.01(g). Nevertheless, the Court expects that a party alleging that a pleading fails to state a claim will confer with counsel for the opposing party before moving to dismiss, and will agree to an order permitting the filing of a curative amended pleading. Fed. R. Civ. P. 10, 15. The term "confer" in Rule 3.01(g) requires a substantive conversation *in person or by telephone* in a good faith effort to resolve the motion without court action, and does not envision an exchange of ultimatums by fax or letter. Counsel who merely "attempt" to confer have not "conferred." Counsel must respond promptly to inquiries and communications from opposing counsel. Board of Governors of the Florida Bar, *Ideals and Goals of Professionalism*, 73 Florida Bar Journal 712 - 13 ¶ 6.10 and *Creed of Professionalism* ¶ 8 (adopted May 16, 1990). The Court may deny motions that fail to include an appropriate, complete Rule 3.01(g) certificate. Motions titled as "unopposed" or "agreed" normally come to the Court's attention prior to the deadline for response. If the parties are in agreement, counsel should consider whether an unfiled stipulation is sufficient in lieu of a motion seeking a Court order.

B.     **Extension of Deadlines**

3

1.   **Dispositive Motions Deadline and Trial Not Extended** – The Court cannot extend a dispositive motion deadline to the eve of trial. In light of the district court's heavy felony trial calendar, at least four months are required before trial to receive memoranda in opposition to a motion for summary judgment, and to research and resolve the dispositive motion sufficiently in advance of trial.

2.   **Extensions of Other Deadlines Disfavored** – Motions for an extension of other deadlines established in this order, including motions for an extension of the discovery period, are disfavored. Failure to complete discovery within the time established by this order shall not constitute cause for continuance unless brought to the attention of the Court at least sixty days in advance of the beginning of the scheduled trial term. The movant must show that the failure to complete discovery is not the result of lack of diligence in pursuing discovery. M.D. Fla. R. 3.09(b). The filing of a motion for extension of time does not toll the time for compliance with deadlines established by rule or order.

C.   **Motions to Compel and for Protective Order** – Motions to compel and motions for a protective order will be denied unless the motion fully complies with M.D. Fla. R. 3.04, requiring the motion to quote in full each interrogatory, question, or request; to quote in full opposing party's objection and grounds, or response which is asserted to be insufficient; and to state the reasons the motion should be granted.

D.   **Motions to File Under Seal** – Whether documents filed in a case may be filed under seal is a separate issue from whether the parties may agree that produced documents are confidential. Motions to file under seal are disfavored. The Court will permit the parties to file documents under seal only upon a finding of extraordinary circumstances and particularized need. *See Brown v. Advantage Engineering, Inc.*, 960 F.2d 1013 (11th Cir. 1992); *Wilson v. American Motors Corp.*, 759 F.2d 1568 (11th Cir. 1985). A party seeking to file a document under seal must file a motion to file under seal requesting such Court action, together with a memorandum of law in support.

E.   **Emergency Motions** – The Court may consider and determine emergency motions at any time. M.D. Fla. R. 3.01(e). Counsel should be aware that the designation "emergency" may cause a judge to abandon other pending matters in order to immediately address the "emergency." The Court will sanction any counsel or party who designates a motion as "emergency" under circumstances that are not true emergencies. It is not an emergency when counsel has delayed discovery until the end of the discovery period.

F.   **Motions for Summary Judgment**

1.   **Required Materials** – A motion for summary judgment shall be accompanied by a memorandum of law, and a concise statement of the material facts as to which the moving party contends there is no genuine issue for trial in a single document not more than 25 pages as required by M.D. Fla. R. 3.01(a), along with supporting affidavits. Each party opposing a motion for summary judgment shall file and serve, within **fourteen (14)** days after being served with such motion, a legal memorandum with citation of authorities as to which the opposing party contends there exists a genuine issue for trial and a concise statement of the material facts in opposition to the relief requested, in a single document limited to not more than 20 pages, as required by M.D. Fla. R. 3.01(b), and shall include necessary affidavits. Both the movant and the party opposing summary judgment shall provide pinpoint citations to the pages and lines of record supporting each material fact. General references to a deposition are inadequate. Material facts set forth in the statement required to be served by the moving party will be deemed admitted for the purposes of the motion unless controverted by the opposing party's statement.

2.   **Under Advisement** – The Court takes a motion for summary judgment under advisement **twenty-one (21)** days from the date it is served, unless the Court orders a different date. Until that date, the party opposing summary judgment may file additional affidavits and exhibits within the purview of Fed. R. Civ. P. 56 in opposition to the motion, but not additional memoranda. Fed. R. Civ. P. 6(d) and 56(c); M.D. Fla. R. 3.01(b). Unless specifically ordered, the

Court will not hold a hearing on the motion. Failure to oppose any motion for summary judgment may result in the entry of a judgment for the movant without further proceedings. *See Milburn v. United States*, 734 F.2d 762, 765 (11th Cir. 1984); *Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985) (*per curiam*); Fed. R. Civ. P. 56(e). All requirements in this order apply to *pro se* litigants as well as to parties represented by counsel.

G.   ***Daubert* and *Markman* Motions** – On or before the date established in the above table for the filing of motions for summary judgment, any party seeking a ruling pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) (admissibility of expert opinions) or pursuant to *Markman v. Westview Instruments, Inc.*, 116 S. Ct. 1384 (1996) (interpretation of a patent claim) shall file and serve an appropriate motion. The parties shall prepare a glossary of technical or scientific terms where appropriate for the Court, court reporter, and trier of fact at any hearing or trial.

H.   **All Other Motions Including Motions *In Limine*** – On or before the date established above, the parties shall file and serve all other motions including motions *in limine*. M.D. Fla. R. 3.01(g) applies, and the parties shall confer to define and limit the issues in dispute.

## III.   JOINT FINAL PRETRIAL STATEMENT

A.   **Meeting *In Person*** – On or before the date established in the above table, **lead trial counsel** for all parties and any **unrepresented parties** shall meet together *in person* pursuant to M.D. Fla. R. 3.06(b) in a good faith effort to:

1.   settle the case; the parties shall thoroughly and exhaustively discuss settlement of the action before undertaking the extensive efforts needed to conduct final preparation of the case for trial and to comply with the requirements of this order;

2.   stipulate to as many facts and issues as possible;  in order to assist the Court, the parties shall make an active and substantial effort to stipulate at length and in detail as to agreed

facts and law, and to limit, narrow, and simplify the issues of fact and law that remain contested; as a rule, parties who have complied with this requirement in good faith will file a Joint Final Pretrial Statement listing far more agreed facts and principles of law than those that remain for determination at trial;

3.   tag, mark, identify, examine, copy, and list all original trial exhibits (including actual document exhibits) that any party will offer in evidence or otherwise tender to any witness during trial [M.D. Fla. R. 3.06(b)(3) and 3.07(a)]; prepare and exchange a final exhibit list bearing a description identifying each exhibit and sponsoring witness [M.D. Fla. R. 3.07(b)]; it is anticipated that counsel will agree to the admission of the bulk of the opposing parties' exhibits without objection, and shall designate on the exhibit list the exhibits which the Court may admit without objection at trial.  Absent good cause, the Court will **not** receive in evidence over objection any exhibits – including charts, diagrams, and demonstrative evidence – not presented to opposing counsel or unrepresented parties for inspection and copying at the required meeting, or not listed in the joint final pretrial statement. Photographs of sensitive exhibits (*i.e.*, guns, drugs, valuables) and of non-documentary evidence, and reductions of documentary exhibits larger than 8 ½" by 14" to be substituted for original exhibits after conclusion of the trial, must be presented to opposing counsel for examination at the meeting to prepare the Joint Final Pretrial Statement. Objections to such photographs or reductions of exhibits must be listed in the Joint Final Pretrial Statement.  The parties are advised that the design of certain courtrooms may preclude the use of large exhibits and posters in a jury trial.  The parties are directed to contact the trial judge's courtroom deputy to discuss exhibits and equipment to be used during trial;

4.   exchange the names and addresses of all witnesses, and state whether they will likely be called; and

5.   prepare a Joint Final Pretrial Statement strictly in conformance with M.D. Fla. R. 3.06(c) and this order.

B.   **The Joint Final Pretrial Statement**

5

1.    **Form of Joint Final Pretrial Statement** – On or before the date established in the above table, the parties shall file a Joint Final Pretrial Statement that strictly conforms to the requirements of M.D. Fla. R. 3.06(c) and this order. **This case must be fully ready for trial at the time that the Joint Final Pretrial Statement is due.** Lead trial counsel for **all** parties, or the parties themselves if unrepresented, shall sign the Joint Final Pretrial Statement. The Court will strike pretrial statements that are unilateral, incompletely executed, or otherwise incomplete. Inadequate stipulations of fact and law will be stricken. Sanctions may be imposed for failure to comply, including the striking of pleadings. At the conclusion of the final pretrial conference, all pleadings are deemed to merge into the Joint Final Pretrial Statement, which will control the course of the trial. M.D. Fla. R. 3.06(e); Fed. R. Civ. P. 16(e).

2.    **Exhibit List** – Exhibit lists are available on www.flmd.uscourts.gov. Unlisted exhibits will not be received into evidence at trial, except by order of the Court in the furtherance of justice. *See* M.D. Fla. R. 3.06(e). The Joint Final Pretrial Statement must attach each party's exhibit list on the approved form listing each *specific* objection ("all objections reserved" does *not* suffice) to each numbered exhibit that remains after full discussion and stipulation. Objections not made – or not made with specificity – are waived.

3.    **Witness List** – On the witness list required by M.D. Fla. R. 3.06(c)(5), the parties and counsel shall designate which witnesses will likely be called, and also designate which witnesses may be called. Absent good cause, the Court will not permit testimony from unlisted witnesses at trial over objection. This restriction does not apply to true rebuttal witnesses (*i.e.*, witnesses whose testimony could not reasonably have been foreseen to be necessary). Records custodians may be listed, but will not likely be called at trial, except in the rare event that authenticity or foundation is contested. For good cause shown in compelling circumstances, the Court may permit presentation of testimony in open court by contemporaneous transmission from a different location. Fed. R. Civ. P. 43(a).

4.    **Depositions** – The Court encourages stipulations of fact to avoid calling unnecessary witnesses. Where a stipulation will not suffice, the Court permits the use of videotaped depositions. At the required meeting, counsel and unrepresented parties shall agree upon and specify in writing in the Joint Final Pretrial Statement the pages and lines of each deposition (except where used solely for impeachment) to be published to the trier of fact. The parties shall include in the Joint Final Pretrial Statement a page-and-line description of any testimony that remains in dispute after an active and substantial effort at resolution, together with argument and authority for each party's position. The parties shall prepare, for submission and consideration at the final pretrial conference or trial, edited and marked copies (as to the portion offered by each party) of any depositions or deposition excerpts which are to be offered in evidence.

5.    **Joint Jury Instructions, Verdict Form, Voir Dire Questions** – In cases to be tried before a jury, counsel shall file a **single jointly-proposed set of jury instructions**, together with a single jointly-proposed jury verdict form. M.D. Fla. R. 5.01(c). The parties should be considerate of their juries, and therefore should submit short, concise special verdict forms. The Court prefers pattern jury instructions approved by the United States Court of Appeals for the Eleventh Circuit. A party may include at the appropriate place in the single set of jointly-proposed jury instructions a contested charge, so designated with the name of the requesting party and bearing at the bottom a citation of authority for its inclusion, together with a summary of the opposing party's objection. The Court will deny outright a proposed instruction that is "slanted" in any way. The Court requests that the parties, where possible, **e-mail the single set of jury instructions and verdict form, preferably in Word® format to the Chambers mailbox.** Each party who wishes for the Court to ask specific questions of the venire during voir dire may also include in the Joint Final Pretrial

Statement a single joint list of proposed questions.

**C.    Coordination of Joint Final Pretrial Statement** – All counsel and parties are responsible for filing a Joint Final Pretrial Statement in full compliance with this order. Plaintiff's counsel (or plaintiff if all parties are proceeding *pro se*) shall have the *primary* responsibility to coordinate compliance with the sections of this order that require a meeting of lead trial counsel and unrepresented parties in person, and the filing of a Joint Final Pretrial Statement and related material. *See* M.D. Fla. R. 3.10 (relating to failure to prosecute). If the plaintiff is proceeding *pro se*, defense counsel shall coordinate compliance. If counsel is unable to coordinate such compliance, counsel shall timely notify the Court by written motion or request for a status conference.

**D.    Trial Briefs and Other Materials**

1.    **Trial Briefs** – In the case of a non-jury trial, on or before the date established above for filing "All Other Motions and Briefs," the parties shall file and serve a trial brief with proposed findings of fact and conclusions of law. The parties may file a trial brief on or before the same date in the case of a jury trial.

2.    **Exhibit Notebook** – On the first day of a jury trial or non-jury trial, the parties shall provide to the Court a bench notebook containing marked copies of all exhibits. The parties may contact the Courtroom Deputy Clerk for the trial judge to determine whether this requirement may be waived.

## IV.    MEDIATION

**A.    Purpose** – To minimize costly pretrial procedures in a case that may be equitably settled, and to secure the just, speedy, and inexpensive determination of this action, all parties shall participate in good faith in court-annexed mediation. *See* Fed. R. Civ. P. 1; Fed. R. Civ. P. 16(a)(5); M.D. Fla. R. 1.01(b), 9.01(b).

**B.    Last Date to Mediate** – The parties shall complete the mediation conference on or before the mediation date set forth earlier in the above

table. Despite M.D. Fla. R. 9.05(d), *neither the mediator nor the parties have authority to continue the mediation conference beyond this date* except on express order of the Court. In any Track Three case, complex case, or case involving multiple parties, the mediator has the authority to conduct the mediation in a series of sessions and in groups of parties so that mediation is complete by the last date to mediate.

**C.    Mediator's Authority** – The mediator shall have all powers and authority to conduct a mediation and to settle this case as are described in Chapter Nine of the Local Rules, except as limited by this order. *The mediation shall continue until adjourned by the mediator.* In order to coordinate the mediation conference, the mediator may set an abbreviated scheduling conference prior to the scheduled mediation. At such time, the mediator may designate one or more coordinating attorneys who shall be responsible for conferring with the mediator regarding the mediation conference. If necessary, the coordinating attorney may coordinate the rescheduling of a mediation conference within the time allowed in this order.

**D.    General Rules Governing Mediation Conference**

1.    **Case Summaries** – Not less than **two days** prior to the mediation conference, each party shall deliver to the mediator a written summary of the facts and issues of the case.

2.    **Identification of Corporate Representative** – As part of the written case summary, counsel for each corporate party shall state the name and general job description of the employee or agent who will *attend and participate with full authority to settle* on behalf of the corporate party.

3.    **Attendance Requirements and Sanctions** – Each attorney acting as lead trial counsel, and each party (and in the case of a corporate party, a corporate representative) with full authority to settle, *shall* attend and participate in the mediation conference. In the case of an insurance company, the term "full authority to settle" means authority to settle for the full value of the claim or policy limit. The Court will

impose sanctions upon lead counsel and parties who do not attend and participate in good faith in the mediation conference.

**4.    Authority to Declare Impasse** – Participants shall be prepared to spend as much time as may be necessary to settle the case. No participant may force the early conclusion of a mediation because of travel plans or other engagements. Only the mediator may declare an impasse or end the mediation.

**5.    Restrictions on Offers to Compromise** – Evidence of offers to compromise a claim is not admissible to prove liability for or invalidity of the claim or its amount. Fed. R. Evid. 408 (includes evidence of conduct or statements made in compromise negotiations); M.D. Fla. R. 9.07(b). All discussion, representations and statements made at the mediation conference are privileged settlement negotiations. Except in a supplemental proceeding to enforce a settlement agreement, nothing related to the mediation conference shall be admitted at trial or be subject to discovery. M.D. Fla. R. 9.07; Fed. R. Evid. 408. A communication between a party and a mediator during a private caucus is also confidential, unless the party tells the mediator that it is not.

**E.    Rate of Compensation** – The mediator shall be compensated as per M.D. Fla. R. 9.02(f), or at a rate stipulated by the parties in advance of mediation and borne equally by the parties. Upon motion of the prevailing party, the party's share may be taxed as costs in this action.

**F.    Settlement and Report of Mediator** – A settlement agreement reached between the parties shall be reduced to writing and signed by the parties and their attorneys in the presence of the mediator. *See also* M.D. Fla. R. 9.06(b) and 3.08. Within **seven days** of the conclusion of the mediation conference, the mediator shall file and serve a written mediation report stating whether all required parties were present, whether the case settled, and whether the mediator was forced to declare an impasse. *See* M.D. Fla. R. 9.06. The mediator may report any conduct of a party or counsel that falls short of a good faith effort to

resolve the case by agreement. *See* M.D. Fla. R. 9.05(e), 9.06(a).

**V.    FINAL PRETRIAL CONFERENCE**

**A.    Lead Trial Counsel and Parties** – If this order does not set a final pretrial conference date, the Court may later set a final pretrial conference on notice. **Lead trial counsel and local counsel for each party, together with any unrepresented party, *must* attend the final pretrial conference in person unless previously excused by the Court.** *See* M.D. Fla. R. 3.06(d); Fed. R. Civ. P. 16(d).

**B.    Substance of Final Pretrial Conference** – This case must be fully ready for trial at the time that the joint final pretrial statement is due. At the final pretrial conference, all counsel and parties must be prepared and authorized to accomplish the purposes set forth in Fed. R. Civ. P. 16 and Local Rule 3.06, including the formulation and simplification of the issues; the elimination of frivolous claims or defenses; admitting facts and documents to avoid unnecessary proof; stipulating to the authenticity of documents; obtaining advance rulings from the Court on the admissibility of evidence; settlement and the use of special procedures to assist in resolving the dispute; disposing of pending motions; establishing a reasonable limit on the time allowed for presenting evidence; and such other matters as may facilitate the just, speedy, and inexpensive disposition of the action. *See* Fed. R. Civ. P. 16(c)-(d).

**VI.    SANCTIONS**

The Court will impose sanctions on any party or attorney: 1) who fails to attend and to actively participate in the meeting to prepare the joint pretrial statement, or who refuses to sign and file the joint pretrial statement; 2) who fails to attend the final pretrial conference, or who is substantially unprepared to participate; 3) who fails to attend the mediation and actively participate in good faith, or who attends the mediation without full authority to negotiate a settlement, or who is substantially unprepared to participate in the mediation; or 4) who otherwise fails to comply with this order. Sanctions may include reasonable attorney's fees and costs, the

striking of pleadings, the entry of default, the dismissal of the case, and a finding of contempt of court. *See* Fed. R. Civ. P. 16(f) and 37; M.D. Fla. R. 9.05(c), (e); 28 U.S.C. § 1927.

## VII.  TRIAL

A.       **Trial Before District Judge** – A case scheduled for trial before a United States District Judge normally will be called for trial on the first day of the trial term indicated in the above table, or as soon after that date as is possible in light of the Court's felony and civil trial calendar.[1] Cases not reached for trial will be carried over to the following month, and issued subpoenas will continue in force. Counsel, parties, and witnesses *shall be available on twenty-four hours' notice* for trial after the beginning of the trial term. A different district judge or visiting judge may try the case. Local Rule 1.03(d). The case may be set for trial in the Orlando Division, Tampa Division, Fort Myers Division, Ocala Division, or Jacksonville Division of the Middle District of Florida. Local Rule 1.02(e). Absent a showing of good cause, any party whose turn it is to provide evidence will be deemed to have rested if, during the hours designated for trial, the party has no further evidence or witnesses available.

B.       **Trial Before Magistrate Judge** – A case scheduled for trial before a United States Magistrate Judge will be called for trial on a date certain. With respect to a civil case that remains pending before a district judge as of the date of this order, the United States District Judges of the Middle District of Florida wish to afford the parties the opportunity to consent to proceed before a magistrate judge. Consent must be unanimous. **The Magistrate Consent form can be found on the Court's website at http://www.flmd.uscourts.** A United States Magistrate Judge is available pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(a) to conduct all further proceedings in this case (or specified motions in this case), to conduct a jury or non-jury trial *beginning on a date certain*, and to enter final judgment. A party may appeal a final judgment of a magistrate judge to the United

States Court of Appeals for the Eleventh Circuit in the same manner as an appeal from the district court. 28 U.S.C. § 636(c)(3); Fed. R. Civ. P. 73. A party is free to withhold consent without adverse substantive consequences. 28 U.S.C. § 636(c)(2); Fed. R. Civ. P. 73(b).

C.       **Settlement** – Counsel shall immediately notify the Court upon settlement of any case. M.D. Fla. R. 3.08. The parties are jointly and severally liable for jury costs for settlement after jurors have been notified to appear without sufficient time to cancel the appearance. Regardless of the status of settlement negotiations, the parties shall appear for all scheduled hearings, including the final pretrial conference and for trial, absent the filing of a stipulation of dismissal signed by all parties who have appeared in the action (or notice of dismissal if prior to answer and motion for summary judgment). Fed. R. Civ. P. 41(a).

        **DONE** and **ORDERED** in Fort Myers, Florida this 19th day of April, 2016.

                        JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

---

[1] This case may be reassigned to a visiting district judge at any time. As stated in paragraph III (B)(1) above, this case should be fully ready for trial at the time that the Joint Final Pretrial Statement is due. In unusual and extraordinary circumstances, the Court may re-notice this case for trial shortly *before* the first day of the trial term if necessary to accommodate the trial schedule of the district judge or a visiting judge.