**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**

| | | |
|---|---|---|
| DAVIS NEUROLOGY, P.A. on behalf of itself and all other entities and persons similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | CASE NO. 4:16-cv-00371-BSM JURY DEMAND |
| vs. | ) ) | |
| DENTAL EQUITIES, LLC d/b/a PEER UNITED, FIRST ARKANSAS BANK & TRUST, And JOHN DOES 1-10, Intending to refer To those persons, corporations or other legal Entities that acted as agents, consultants, Independent contractors or representatives, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, FOR CERTIFICATION OF A SETTLEMENT CLASS, AND FOR PERMISSION TO DISSEMINATE CLASS NOTICE

Plaintiff Davis Neurology, P.A. ("Plaintiff"), individually and on behalf of all others similarly situated, respectfully submits this Memorandum in support of its Motion For Preliminary Approval of Class Settlement, For Certification of a Settlement Class, and For Permission to Disseminate Class Notice (the "Motion") with respect to a proposed settlement between Plaintiff and First Arkansas Bank & Trust ("First Arkansas") including other Released Parties (collectively, "Defendants").

For the reasons explained herein, the Court should: (1) preliminarily approve the class settlement as fair, reasonable, and adequate; (2) provisionally certify an opt-out settlement class under Rule 23(b)(3) Federal Rules of Civil Procedure and an injunctive relief class under Rule 23(b)(2) for settlement purposes only; (3) provisionally appoint the Plaintiff as the class representative for a proposed Settlement Class (as defined herein); (4) provisionally appoint

1

Plaintiff's Counsel as class counsel for the Settlement Class under Rule 23(g); (5) preliminarily approve the form, manner, and content of the proposed class notices, claim form, and proposed notice procedures; (6) preliminarily approve the Garden City Group, LLC ("Garden City Group") to serve as Settlement Claims Administrator; and (7) schedule a final approval/fairness hearing under Fed. R. Civ. P. 23 no earlier than 150 days from the date preliminary approval is granted.[1]

## I.   **Background**

This case involves a set of approximately 380,000 unsolicited faxes successfully sent by or on behalf of Defendants advertising "Doctors' Club" credit cards.  The  Plaintiff, on behalf of itself and all others similarly situated, contends that it and the proposed Settlement Class are entitled to recover statutory damages under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

### A.  **Procedural History**[2]

In January 2016, undersigned counsel was retained by the Plaintiff concerning an unsolicited fax that it had received on December 18, 2015 advertising the availability of a "Doctors Club" credit card.  After conducting a significant amount of factual investigation and

---

[1] In connection with this Memorandum and in support of the Motion, the Plaintiff has filed (1) the Declaration of Joe P. Leniski (the "Leniski Declaration"), (2) the Declaration of James A. Streett, and (3) the Declaration of Lori Castaneda from the Garden City Group (the "Garden City Group Declaration").  In addition to the attachments identified above, the Leniski Declaration also attaches a firm resume for the law of Branstetter, Stranch & Jennings and describes Mr. Leniski's personal experience in complex and class litigation as it relates to the Rule 23(a) adequacy requirement and the appointment as settlement class counsel under Rule 23(g).  The Streett Declaration similarly describes Mr. Streett's personal experience in complex and class litigation as it relates to the Rule 23(a) adequacy requirement and the appointment as settlement class counsel and under Rule 23(g).  Finally, the Castaneda Declaration sets forth the qualifications of the Claims Administrator.

[2] Except as otherwise noted, this section is supported by the Leniski Declaration and the case docket.

legal research, counsel identified Dental Equities, LLC ("Dental Equities") and its founding member, Dr. Kianor Shahmohammadi aka Dr. Kianor Shah, as potential defendants who sent the fax in question.

On January 15, 2016, based on information available and known at the time, counsel filed a Class Action Complaint on behalf of the Plaintiff in Arkansas Circuit Court (Case No. 58cv-16-33), naming as defendants Dental Equities and Dr. Shah individually.[3]   At the time, limited information was publicly available concerning faxes and available materials indicated that Dr. Shah was acting under various business names.   Accordingly, the Plaintiff served written discovery requests on Dental Equities in connection with serving the Summons and Complaint.[4]

Shortly after Plaintiff perfected service of the Summons, Complaint, and written discovery requests, Dr. Shah personally and on behalf of Dental Equities, contacted counsel acknowledging service of process and inquiring about the possibility of resolving the lawsuit. Pursuant to those discussions, Dr. Shah and Dental Equities agreed to expedite certain responses to Plaintiff's discovery requests, and thereafter furnished Counsel with detailed financial information for both himself and Dental Equities (including an asset detail, trademark registrations, tax returns, bank account balances, investors, and disclosure about the lack of insurance coverage) and the identity of the entity with whom he was co-promoting the credit cards, First Arkansas, a community bank located in Jacksonville, Arkansas.

---

[3] The lawsuit also named several "John Doe" defendants whom the Plaintiff believed were also involved in sending the fax in question, but whose identity was unknown at the time.   The Plaintiff effectuated service on Dental Equities on January 21, 2016.

[4] *See* Dkt. No. 1, Notice of Removal, at Page 31 of 67.

On February 12, 2016, the Plaintiff voluntarily dismissed Dr. Shah in his individual capacity without prejudice.[5]  As a condition of the dismissal, Dr. Shah agreed to furnish additional information with respect to the fax campaign, including: (1) the identity of all individual and entities that assisted with facilitating the fax campaign in question, including the lead company and the fax distributor; (2) any contracts or agreements related thereto; and (3) any information he had regarding the fax numbers to whom the faxes were sent.

On or about April 22, 2016, consistent with the agreement between Dr. Shah and Plaintiff, Dental Equities produced a flash drive containing 2.24 Gigabytes of records relating to the faxes identified in the Class Action Complaint.  Counsel spent a significant amount of time analyzing this production, which included a trove of email communications and documentation exchanged between and among Dr. Shah, First Arkansas and "Card Assets" (a division of First Arkansas) and separately with J-Blast (a fax blast service), and CarePrecise (a lead generator that provided the fax numbers for the campaign) regarding the creation, transmission, and number of faxes sent to the Plaintiff and other putative class members.

The production more fully described First Arkansas' role in authorizing the illegal and unsolicited fax transmissions in question. Based on the facts uncovered through the discovery provided by Dental Equities, as well as additional publicly available information gathered by Counsel, the Plaintiff on May 12, 2016, filed a First Amended Class Action Complaint in Arkansas Circuit Court that added First Arkansas as a defendant.  On May 13, 2016, the Plaintiff filed a Second Amended Complaint that added amended allegations related to the faxes and First Arkansas's role with respect to those faxes, included an additional exhibit related to the number

---

[5] The Arkansas trial court signed the Order of Dismissal on February 17, 2016.

of faxes at issue, and provided a more tailored class definition.[6]  On June 14, 2016, Defendant

First Arkansas removed this case to the Federal District Court for the District of Arkansas.[7]

### B.  The Parties' Mediation and Mediated Settlement

Beginning in early June 2016, counsel for First Arkansas and Counsel on behalf of the

Plaintiff engaged in preliminary discussions regarding the possibility of settlement, which

culminated in an agreement to mediate the lawsuit before a qualified, independent third-party

mediator.  In mid-June, 2016, the parties agreed to mediation before Richard "Rick" L. Ramsay,

a former President of the Arkansas Bar Association and Southern Conference of Bar Presidents,

and a distinguished mediator in Little Rock, Arkansas.  Mr. Ramsay has substantial experience in

alternative dispute resolution and commercial litigation.

In advance of the mediation, the parties provided Mr. Ramsay with all filed materials in

the litigation, including case pleadings.  He also required each party to prepare and submit

confidential mediation statements.  Following the parties' submission of their respective

confidential mediation statements, Mr. Ramsay held pre-mediation conference calls with the

parties.

On August 15, 2016, the parties participated in a full-day, hard-fought mediation with

Mr. Ramsay, which resulted in the parties reaching a settlement in principle.  Throughout the

mediation Mr. Ramsay raised numerous legal and evidentiary issues related to each party's case

forcing the parties to vet their analysis and focus on the most critical elements of the case.  The

resulting arms-length negotiation resulted in a proposed settlement ultimately memorialized in

the Settlement Agreement (the "Settlement Agreement").

---

[6] The First and Second Amended Complaints were served on First Arkansas on May 18, 2016.

[7] Dkt. No. 1.

Pursuant to the settlement in principle reached at the mediation on August 15, 2016, First Arkansas agreed to pay $1,525,000.00 into a non-reversionary settlement fund. Over the course of the next month and a half, the parties negotiated over a formal Settlement Agreement memorializing the terms of the agreement, which would include the Notice Plan (as herein defined), the proposed form of notice, and the proposed form and manner of the claims process. Pursuant to these negotiations, First Arkansas further agreed to class-wide injunctive relief against sending any fax (either directly or by authorizing another entity to do so) advertising the availability of "Doctors Club" credit cards without the recipients' prior express consent and without including the opt-out notice required by law. The parties also negotiated that in the event the combined amounts of any settlement payment checks to class members that remain uncashed for more than 90 days is less than $50,000, the money will distributed *cy pres* to the Lawyers Committee for Civil Rights Under Law, subject to court approval. The parties also selected as Claims Administrator Garden City Group, a qualified third-party claims and settlement administrator. The parties further negotiated the terms and process for obtaining Court approval of both the settlement and a petition for an award of attorneys' fees and reimbursement of expenses by Plaintiff's counsel, as well as the petition for an incentive award to Plaintiff. Significantly, consummation of the Settlement is not contingent on approval of the petition attorney's fees and costs or petition for the incentive award. Finally, the parties negotiated over the language of the proposed preliminary approval order and the final approval order, including the scope of the release.

The Settlement Agreement and its exhibits, which have now been finalized, is attached as collective Exhibit 2 to the Leniski Declaration.[8]

### C.  Material Terms of the Settlement

#### 1.  Cash Payments to Settlement Class Members and Injunctive Relief

Under the terms of the Settlement Agreement, Defendants will provide monetary benefits and injunctive relief to a settlement class (the "Settlement Class") defined as:

> All persons within the United States who on or after four years prior to the filing this Action, were successfully sent a facsimile transmission advertising the commercial availability or quality of any property, goods, or services by or on behalf of Defendants related to "Doctors Club" credit cards.  Excluded from the Settlement Class are First Arkansas and Dental Equities, and any affiliate, subsidiary or division of First Arkansas and Dental Equities, along with any employees thereof, and any entities in which any of such companies have a controlling interest, as well as all persons who validly opt-out of the Settlement Class.[9]

Defendants will be required to pay $1,525,000.00 into a Settlement Fund. (¶ II.24.)  Members of the Settlement Class ("Settlement Class Members") will be entitled to receive *pro rata* cash payments from the Settlement Fund (net of attorney's fees and expenses, claims administration costs, and the Plaintiff's incentive award) on a claims-made basis, pursuant to a reasonable notice and administration procedure set forth in the Settlement Agreement (and as more fully described below).  Checks shall be valid for 90 days from the date of the check, thereby

---

[8] Unless otherwise noted, terms used herein have the same meaning as those terms are defined in the Settlement Agreement. The Settlement Agreement attaches as exhibits a claim form (Ex. A) (the "Claim Form"), a proposed short-form fax notice (Ex. B) (the "Fax Notice") (attached to which as Exhibits 1 and 2 are exemplars of the faxes that form the basis for this action), a proposed long-form notice to be posted on the settlement website (Ex. E) (the "Long-Form Notice"), a proposed Preliminary Approval Order (Ex. D) (the "Preliminary Approval Order"), and a proposed Final Approval Order (Ex. C) (the "Final Approval Order").

[9] *See* Settlement Agreement ¶ II.25.  *Id.*

providing Settlement Class Members reasonable time in which to collect the proceeds to which they are entitled.  (¶ III.E.5.)

In order to exercise the right to obtain monetary relief, Settlement Class Members need only complete and submit to the Garden City Group (the "Claims Administrator") a simple, one-page claim form by (1) mail (with an actual signature), (2) fax (with an actual signature), or (3) electronically through the website (with an electronic signature). (¶ III.E.2-3.)   Under the proposed claims procedures, in the event a Settlement Class Member submits an invalid form, the Claims Administrator will inform that individual of the defect and afford him, her, or it the opportunity to cure.  (¶ III.E.3.)  Settlement Class Members will have ninety (90) days following the dissemination of Class Notice to submit their claim forms, giving them sufficient time to review the settlement terms and file a claim.  (¶ II.3.)  Settlement Class Members who wish to opt out or object to the Settlement will have forty-five (45) days following the dissemination of Class Notice to do so, which provides reasonable time to evaluate the settlement terms, retain counsel, and assert objections.  (¶ III.K.1.)

Any amount above $50,000 that remains in the Settlement Fund after all valid claims have been paid will be distributed *pro rata* (net of costs of administration) among the Settlement Class Members who cashed their initial cash award.  (¶ III.F.1.)  In the event the combined amounts of any settlement payment checks to Settlement Class Members that remain uncashed for more than 90 days is less than $50,000, the money will distributed *cy pres* to the Lawyers Committee for Civil Rights Under Law.[10]  No amounts of the Settlement Fund shall revert to Defendants.  (¶ III.C.)

---

[10] *Id.* III.F.

In exchange for the benefits conferred by the proposed settlement, all Class Members who do not opt-out/exclude themselves will be deemed to have provided a release of the Released Claims, as that term is defined in the Settlement Agreement. (¶¶ III.O and II.2 (defining "Releasing Parties")).

Defendants also agree to enter into a permanent injunction against sending any fax (either directly or by authorizing another entity to do so) advertising the availability of "Doctors Club" credit cards without the recipients' prior express consent and without including the opt-out notice required by law.  (¶ III.C)  For purposes of settlement only, the Defendants have agreed not to oppose certification of a Rule 23(b)(2) class to effectuate class-wide injunctive relief.

      2.  <u>Class Notice Will Be Disseminated in Accordance with Rule 23 and Due Process, and the Court Should Approve Garden City Group to Serve as Claims Administrator</u>

Subject to Court approval, the parties propose to use the Garden City Group, a qualified third-party claims and settlement administrator, to serve as the Claims Administrator. (¶ II.4.) As more fully set forth in the Castaneda Affidavit, the Garden City Group is a recognized leader in legal administration services for class actions and has extensive experience and expertise in every aspect of class action administration, from notice and publication and nominee outreach, to website design, claimant communications, distribution, and tax reporting.  During its 30-year history, the Garden City Group has administered over 3,200 settlements, including some of the country's largest class actions.  The Garden City Group has mailed over 400 million notices; processed over 52 million claims; disseminated over 800 million e-mails; handled over 32 million calls; designed and launched over 1,000 case websites; distributed over $63 billion in compensation; and issued approximately 30 million checks. *See id.* at ¶ 4.

If approved as the Claims Administrator, the Garden City Group will be responsible for, among other things, issuing notice to Settlement Class Members by various means (including via fax and on a settlement website), making available the Settlement Agreement and exhibits thereto and other relevant information (¶¶ II.17, III.J, and III.N), establishing and maintaining the settlement website (¶¶ II.28 and III.J.3.b) establishing and administering the Settlement Fund (¶¶ III.C and III.N), processing Class Members claims' and associated claim forms (¶¶ II.E and III.N), receiving exclusion requests (¶¶ III.K and III.N), issuing settlement checks to claimants (¶¶ III.E.5 and III.N), and conducting other activities relating to notice and settlement administration under the parties' supervision while maintaining detailed records of its activities (*see* ¶ III.N). Defendants have agreed to cooperate with the Claims Administrator and will provide available data concerning the fax numbers at issue in a reasonably accessible and searchable format. (*Id.* ¶ III.J.2.)

In an effort to reach as many Settlement Class Members as possible, and subject to Court approval, the Settlement Agreement sets forth notice procedures (the "Notice Plan") involving two forms of notice to be implemented within 30 days of entry of a Preliminary Approval Order by this Court. (*See* ¶ III.J.2-3.) As reflected in the Notice Plan detailed in the Settlement Agreement, the Garden City Group is prepared to implement the following notice procedures:

- **Fax Notice ("Fax Notice") (¶ III.J.3.a)**: Direct distribution of the Fax Notice through direct faxes to all Settlement Class members whose fax numbers can be determined.

- **Settlement Website Notice ("Website Notice") (¶¶ II.28 and III.J.3.b)**: Establishment of a website (the "Settlement Website") that will contain information regarding the settlement, including hyperlinked access to the Settlement Agreement, the full-length Website Notice, the Claim Form, the Court's preliminary approval Order, and any other documents that the parties agree to include or that the Court otherwise orders to be posted.

Both the Fax Notice and the Website Notice describe the material terms of the Settlement Agreement, as well as the procedures for each Settlement Class Member to receive benefits under the proposed settlement. The notices also describe the procedures for Settlement Class Members to exclude themselves from the settlement and to provide comments in support of in objection to the Settlement. They indicate, as reflected in the Settlement Agreement, that any Settlement Class Member wishing to be excluded from the Settlement can opt-out by making a timely request. The procedures for opting out are those commonly used in class action settlements and are straightforward and clearly described in both the Fax and Website Notices.

This Notice Plan is designed to provide the best notice practicable under the circumstances. The administrative fees, costs, expenses for the Notice Plan will be paid from the Settlement Fund. (¶ III.J.1.)

### 3.   Attorney's Fees and Incentive Awards

Class Counsel will apply to the Court for an award of attorneys' fees up to 30% of the Settlement Fund (not to exceed $457,500.00), plus actual out-of-pocket expenses. (¶ III.H.) This amount is subject to Court approval pursuant to Rule 23(h) and will serve to compensate Settlement Class Counsel for the time, risk, and expense they incurred litigating Settlement Class Members' claims on their behalf. Importantly, approval of the attorney's fees and costs requested by putative Settlement Class counsel is *not* a condition of the Settlement. (¶ III.H.)

Prior to the final approval hearing, the Plaintiff will ask the Court to award it an incentive award (the "Incentive Award") for the time and effort it invested in this action. As part of the Settlement, Defendants agree not to object to the application for a payment of up $10,000 from the Settlement Fund as an incentive award to the Plaintiff, subject to Court approval. (¶ III.G.). Approval of the Incentive Award is *not* a condition of the Settlement. (¶ III.G.)

The attorney's fees and expenses, Incentive Award, and Claims Administration costs will be paid from the Settlement Fund.  However, the Court does ***not*** need to award or otherwise rule on Class Counsel's fees or the Plaintiff's Incentive Award at this time.  Class Counsel will file appropriately supported motions in connection with the schedule set by the Court for a final fairness hearing.

## II.      Standard for Preliminary Approval

### A.  The Proposed Class Settlement Requires Court Approval Under Rule 23

The law favors settlement, particularly in class actions and other complex cases in which substantial resources can be conserved by avoiding the uncertainty, time, cost, and rigor of prolonged litigation.[11]  Where, as here, the parties propose to resolve class action litigation through a class-wide settlement, they must obtain the court's approval, and the court must determine whether the settlement is "fair, reasonable, and adequate."[12]

### B.  The Two-Step Process

Approval of a class action settlement involves a two-step process:

- First, counsel submits the proposed terms of settlement and the court makes a preliminary fairness evaluation.[13]  If the preliminary evaluation of the proposed settlement does not

---

[11] *See Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1*, 921 F.2d 1371, 1383 (8th Cir. 1990) ("The law strongly favors settlements.  Courts should hospitably receive them . . . . As a practical matter, a remedy that everyone agrees to is a lot more likely to succeed than one to which the defendants must be dragged kicking and screaming."); *In re Charter Commcn's Sec. Litig.*, No. 4:02-cv-1186-CAS, 2005 U.S. Dist. LEXIS 14722, at *14-15 (E.D. Mo. June 30, 2005) ("In the class action context in particular, there is an overriding public interest in favor of settlement . . . . Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.") (quoting *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 313 (7th Cir. 1980)) (internal quotation marks omitted).

[12] *See* Fed. R. Civ. P. 23(e).

[13] *See Manual for Complex Litigation* § 21.632 (4th ed. 2004) (hereinafter, "*Manual*"); *see also* 4 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 11:25, at 38-39 (4th ed. 2002) (hereinafter, "*Newberg on Class Actions*") (endorsing two-step process); *Hashw v. Dep't Stores*

disclose grounds to doubt its fairness or other obvious deficiencies, and appears to fall within the range of possible approval, the court directs that notice under Rule 23(e) be given to Class Members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the Settlement.[14] The notice should tell Class Members how to make their views on the settlement known to the court.[15]

- Second, the Court determines whether settlement is "fair, reasonable, and adequate" under Fed. R. Civ. P. 23(e)(2).[16]

The Plaintiff's Unopposed Motion asks the Court to take the first step in the settlement approval process by granting preliminary approval of the proposed settlement.

### III.   Preliminary Approval Determination

At the preliminary approval stage, the Court should "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms . . . ."[17] The ultimate question for the Court is whether the settlement is "within the range of possible final approval," such that the class should be notified and a formal fairness hearing scheduled.[18] "If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the

---

*Nat'l Bank*, Civ. No. 13-727 (RHK/BRT), 2016 U.S. Dist. LEXIS 61004 (D. Minn. Apr. 26, 2016); *Schoenbaum v. E.I. DuPont de Nemours & Co.*, 2009 U.S. Dist. LEXIS 114080, at *12-18 (E.D. Mo. Dec. 8, 2009).

[14] *See Manual* § 21.633.

[15] *Id.*

[16] *See Ortega v. Uponor, Inc.*, 716 F.3d 1057, 1063 (8th Cir. 2013).

[17] *Manual* § 21.632.

[18] *Schoenbaum*, 2009 U.S. Dist. LEXIS 114080, at *13, 42; *see also Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982) (the purpose of preliminary approval "is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing.")

class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement."[19]  The standard at the **preliminary approval** is therefore **lower** than the "fair, reasonable, and adequate" standard required by Rule 23(e)(2) for **final approval**.[20]

With respect to the procedural posture of the proposed settlement, courts usually evaluate the character of the settlement negotiations and search for any indicia of collusion.[21]  Where a settlement agreement was negotiated through an experienced, third-party neutral mediator, that factor weighs in favor of preliminary approval.[22]

## IV.   Application

The relevant factors for preliminary approval are satisfied here.

### A. The Settlement is Entitled to a Presumption of Fairness, Particularly Because it was Negotiated Through a Third-Party Neutral.

In assessing whether preliminary approval should be granted, the proposed settlement is entitled to a presumption of fairness.  Courts usually adopt "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class,

---

[19] *Newberg on Class Actions*, § 11.25; *see also First Nat'l Bank v. Am. Lenders Facilities, Inc.*, 2002 WL 1835646, at *1 (D. Minn. 2002) ("The proposed settlement between Plaintiff Class and the Defendants appears, upon preliminary review, to be within the range of reasonableness and accordingly, the Notice . . . shall be submitted to the class members for their consideration and for hearing under Fed. R. Civ. P. 23(e).")

[20] *Schoenbaum*, 2009 U.S. Dist. LEXIS 114080, at *3; *see also Newburg on Class Actions* § 13:13 (5th ed. 2011) ("[T]he standard that governs the preliminary approval inquiry is less demanding than the standard that applies at the final approval phase."); *Cortez v. Nebraska Beef, Ltd.*, 8:08CV90; 8:08CV99, 2012 U.S. Dist. LEXIS 15846, at *4 (D. Neb. Feb. 9, 2012).

[21] *Newburg on Class Actions* § 13:14 ("The primary procedural factor courts consider is determining whether to preliminarily approve a proposed settlement is whether the agreement arose out of arms-length, noncollusive negotiations.")

[22] *Id.* § 13.19.

is presented for court approval."[23]   As the Eighth Circuit has observed, class action settlement agreements "are presumptively valid", a "strong public policy favors agreements, and courts should approach them with a presumption in their favor." [24]   The Settlement is therefore presumptively fair, particularly because it was reached through mediation with a third-party neutral mediator.[25]   As explained in the Leniski Declaration and as discussed above, the parties mediated their dispute before the President-Emeritus of the Arkansas Bar Association.   In advance of the mediation, the parties provided all filings to the mediator, submitted confidential mediation statements with supporting evidence, and participated in pre-mediation conference calls with the mediator to address their respective positions.   The day-long mediation was hard fought by both sides, and the resulting settlement was the product of an arms' length negotiation. The presumption of fairness attaches.

### B.  The Settlement provides substantial relief for Settlement Class Members, particularly in light of the uncertainty, time and cost of continued litigation.

The proposed settlement provides substantial relief for Settlement Class Members, particularly in light of the uncertainty, time, and cost of continued litigation.

---

[23] *Newberg on Class Actions* § 11:41.

[24] *Little Rock Sch. Dist.*, 921 F.2d at 1388; *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148-49 (8th Cir. 1999) (after the parties' arms-length negotiations, "judges should not substitute their own judgment as to optimal settlement terms for the judgments of the litigants and their counsel") (internal quotations marks omitted); *see also In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 934 (8th Cir. 2005) ("We have recognized that a class action settlement is a private contract negotiated between the parties . . . . Rule 23 requires the court to intrude on that private consensual agreement merely to ensure that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair, adequate, and reasonable to all concerned.")

[25] *Hashw*, 2016 U.S. Dist. LEXIS 61004, at insert (citing *In re Zurn Pex Plumbing Prods. Liab. Litig.*, MDL No. 1958, 2013 U.S. Dist. LEXIS 27155, at *6 (D. Minn. Feb. 27, 2013)).

The settlement requires Defendants to pay $1,525,000.00 into a Settlement Fund, from which all eligible Settlement Class Members (of which there are approximately 380,000) will participate and be paid *pro rata*.  The Settlement Agreement also provides, to the extent feasible, that any money remaining in the Settlement Fund – for example, from uncashed checks sent to Settlement Class Members – will be redistributed to all class members who cashed settlement checks.  Any funds remaining after the second distribution to class members will thereafter be allocated to the *cy pres* recipient recommended by the parties, subject to the Court's approval.  The Settlement Fund is therefore non-reversionary, ensuring that all or nearly all monetary benefits will go to Settlement Class Members, and that ***no amount*** of the Settlement Fund will be returned to Defendants.  All of these aspects of the proposed settlement favor preliminary approval.[26]

The fact that the Settlement Fund does not constitute the full measure of statutory damages available to the Settlement Class does not weigh against preliminary approval.[27]  The Settlement was reached after factual investigation and discovery of the claims and issues, after taking into consideration the risks involved in the actions, after arm's length negotiations presided over by an experienced mediator, and after thorough subsequent negotiations following the mediation.  Indeed, the proposed settlement compares favorably to other TCPA class

---

[26] *See, e.g.*, *Hashw*, 2016 U.S. Dist. LEXIS 61004, at *6 and *22-*23 (finally approving settlement).

[27] *See, e.g, In re BankAmerica Corp. Secs. LItig.*, 210 F.R.D. 694, 708 (E.D. Mo. 2002) ("[A] settlement is a product of compromise and the fact that a settlement provides only a portion of the potential recovery does not make such settlement unfair, unreasonable, or inadequate."); *Holden v. Burlington N., Inc.*, 665 F. Supp. 1398, 1414 (D. Minn. 1987) ("A cash settlement amount to only a fraction of the potential cash recovery (and the present proposed settlement is not such a recovery) does not in itself render the settlement unfair or inadequate.  In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.") (internal citations and quotations omitted).

settlements wherein class members received smaller *pro rata* monetary recoveries.[28]  Even in comparing this settlement to other cases, the Court should bear in mind that the *pro rata* recovery per "class member" will likely be less than the *pro rata* recovery per **class claimant** – and it will be the latter figure that the Court will be asked to consider under Rule 23(e) at the final hearing.[29]

Although the Plaintiff believes that its claims against Defendants have merit and that this case would be appropriate for class certification, the Plaintiff and the Settlement Class could face a number of difficult substantive challenges if the litigation were to continue. Thus, prevailing on the merits of the claims and on a motion for class certification is by no means guaranteed.

Notwithstanding discovery efforts to date, continued litigation would involve significant motion practice, including a contested motion for class certification and, perhaps, a motion for summary judgment by First Arkansas. Even if the Court certified a class, the Defendants would have the right to petition for interlocutory appeal under Fed. R. Civ. P. 23(f), necessitating

---

[28] *See, e.g., Kramer v. Autobytel*, No. 10-cv-02722, 2012 U.S. Dist. LEXIS 185800 (N.D. Cal. Jan. 27, 2012) (approving $12.2 million settlement to benefit 47 million class members); *Malta v. Fed. Home Loan Mortg. Corp.,* No. 10-cv-1290, 2013 U.S. Dist. LEXIS 15731 (S.D. Cal. Feb. 5, 2013) (preliminarily approving $17.1 million settlement to 5,887,508 class members; final approval granted at Dkt. No. 91); *Adams v. AllianceOne Receivables Mgmt. Inc.,* No. 08-cv 00248, Dkt. Nos. 116 & 137 (S.D. Cal.) (attached as collective **Exhibit 1** hereto) (approving $9 million settlement to benefit 6,696,743 class members); *Palmer v. Sprint Nextel Corp.*, No. 09-cv-01211, Dkt. Nos. 84 & 91 (W.D. Wash.) (attached as collective **Exhibit 2** hereto) (approving $5.5 million settlement to benefit 18.1 million class members); *Reamer v. Portfolio Recovery Assocs., LLC*, Case No. 3:14-cv-02223-JAH-BGS (S.D. Cal.) (Dkt. No. 19) (June 23, 2016) (granting preliminary approval of $18 million settlement to benefit 7.4 million class members) (attached as **Exhibit 3** hereto); *In re Capital One Telephone Consumer Protection Act Litigation*, Master Docket No. 1:12-cv-10064, MDL No. 2416 (Dkt. No. 137) (July 29, 2014) (attached as **Exhibit 4** hereto).

[29] *See, e.g.*, *Amadeck v. Capital One Fin. Corp. (In re Capital One Tel. Consumer Protection Act Litig.*), 80 F. Supp. 3d 781, 789-90 (N.D. Ill. 2015) (indicating that court had preliminarily approved settlement at a rate of $2.72 per class member and holding that, after receiving class claims forms, settlement was reasonable under Rule 23(e) at a rate of $34.60 per class member).

further time and expense, and delaying proceedings even further if the appellate court accepts the appeal.[30]   Regardless, if the case proceeds, the parties would need to conduct additional discovery, including written discovery and party depositions, as well as potential discovery of third parties.   The parties would likely also need to engage experts to analyze the available transmittal data.  Also, it would take a substantial amount of time, likely more than a year, before the case would go to trial, and any judgment in favor the class could be delayed by the appeal process.

Ultimately, the Settlement Agreement provides Settlement Class Members with real and immediate monetary and injunctive relief, despite the fact that this is a purely statutory damages case in which class members incurred nominal economic damages or whose actual damages are difficult or impossible to quantify. In sum, the proposed settlement "substantially fulfills the purposes and objectives of [the TCPA], and provides substantial relief to the Settlement Class Members, without the cost, risk, or delays of further litigation at the trial and appellate levels."[31] The monetary and injunctive relief provided by the parties' proposed settlement is well within "the range of reasonableness" meeting the requirements for preliminary approval.[32]

## C. There Are No "Obvious Deficiencies" or Procedural Deficiencies that Would Preclude Approval of the Settlement

The settlement does not include any "obvious deficiencies" that would preclude approval of the settlement, such that notifying the class and proceeding to a formal fairness hearing would

---

[30] *See Hashw*, 2016 U.S. Dist. LEXIS 61004, at *14-*15.

[31] *Blando v. Nextel Retail Stores, Inc.*, No. 02-0921-FJG, Order, Doc. 41, at 2 (W.D. Mo. Oct. 9, 2003).

[32] *First National Bank*, 2002 WL 1835646, at *1.

be a waste of time.[33]   There are simply no "red flags" here: the settlement does not favor certain Settlement Class Members over others, it is not conditional on the amount of the Incentive Award or attorney's fees,[34] and it was reached through arms' length negotiations between attorneys familiar with the legal and factual issues of the case and well versed in litigating similar consumer class claims.   Preliminary approval is therefore warranted.

## V.   The Proposed Class Should be Certified for Settlement Purposes and the Plaintiff and Its Counsel Be Preliminarily Approved as Class Representative and Settlement Class Counsel Respectively

### A.  Standard

Before granting preliminary approval of a proposed settlement in a case in which a class has not yet been certified, the court should determine whether the class proposed for settlement purposes is appropriate under Rule 23 under a relaxed standard.[35]   To show that provisional certification of the Settlement Class is warranted, the Plaintiff must establish that the four threshold requirements of Rule 23(a) are satisfied and that, under Rule 23(b)(3), "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly

---

[33] *Newberg on Class Actions*, § 11.25; *see also Schoenbaum*, 2009 U.S. Dist. LEXIS 114080, at *13-14 ("[C]ourts should consider issues such as whether the settlement carries the hallmarks of collusive negotiations or uniformed decision-making, is unduly favorable to class representatives or certain class member, or excessively compensates attorneys.")

[34] *Hashw*, 2016 U.S. Dist. LEXIS 61004, at *6 n. 5.

[35] *See Manual* § 21.632; *Schoenbaum*, 2009 U.S. Dist. LEXIS 114080, at *20-21.  As explained, in *Schoenbaum*, the Rule 23 standards are relaxed in the preliminary approval context.

and efficiently adjudicating the controversy."[36]  The interests of justice require that, when in doubt, any error, if there is to be one, should be committed in favor of allowing the class action.[37]

### B. Numerosity

Rule 23(a)(1) requires that the proposed class be so numerous that joinder of all members is impracticable.[38]  The numerosity requirement of Rule 23(a) is satisfied here because the proposed Settlement Class consists of approximately 380,000 individuals or entities to whom the faxes at issue were successfully transmitted.  Joinder is therefore impracticable.

### C. Commonality

Commonality can be satisfied if "there is a single legal issue common to all members of the class . . . .  Therefore, factual differences are not fatal if common questions of law exist."[39]  The commonality requirement is satisfied because there are numerous questions of law and fact common to the Settlement Class that center on Defendants' common practice of sending unsolicited faxes as part of a marketing campaign related to Doctors' Club credit cards.

### D. Typicality

Typicality requires a demonstration that there are other members of the class who have the same or similar grievances as the class representative.[40]  This requirement is met "fairly

---

[36] FED. R. CIV. P. Rule 23(b)(3); *see also Ford v. Townsends of Ark., Inc.*, Case No. 4:08cv00509, 2010 U.S. Dist. LEXIS 46093, * 16 (E.D. Ark. Apr. 9, 2010) (citing FED. R. CIV. 23(a)) (articulating Rule 23 elements).

[37] *In re Aquila ERISA Litig.*, 279 F.R.D. 202, 207 (W.D. Mo. 2006).

[38] *Aquila ERISA Litig.*, 237 F.R.D. at 207.

[39] *Ford*, 2010 U.S. Dist. LEXIS, at * 18.

[40] *Aquila ERISA Litig.*, 237 F.R.D. at 209.

easily," so long as other class members have claims similar to those of the named plaintiff.[41]
Here, typicality is satisfied because the Plaintiff and the Settlement Class Members all received a
fax advertising the availability of "Doctors' Club" credit cards.  The claims of the Plaintiff arise
out of the same alleged course of conduct, and seek the same statutory damages.  Its claims are
therefore typical of those of the Settlement Class.[42]

### E.  Adequacy

The adequacy requirements are also met here.  Adequacy involves whether (1) the class
representative has a common interest with the members of the class, and (2) whether the class
representative will vigorously prosecute the interests of the class through qualified counsel."[43]
Here, the Plaintiff's interests are coextensive with the interests of the settlement class in
recovering statutory damages from the Defendants for the alleged TCPA violations and in
obtaining injunctive relief to prevent Defendants from sending unsolicited faxes in the future.
Moreover, putative class counsel have significant experience in prosecuting class actions and
complex cases, as reflected in the Leniski Declaration (including the firm resume) and the Streett
Declaration.  Putative Settlement Class Counsel are committed to zealously representing the
Plaintiff and the interests of the Settlement Class, and assert that their commitment has already
been established by virtue of the identification of the factual and legal issues, the drafting and
filing of the pleadings, the undertaking of discovery, and the ultimate presentation of this matter
to the Court for purposes of preliminary approval.  These qualifications are more than sufficient

---

[41] *Id.*; *see also Ford*, 2010 U.S. Dist. LEXIS, at *19 (stating this requirement is "usually fairly
easily met by showing that the claims of the proposed class members stem from a single event or
are based on the same legal or remedial theory.")

[42] *Doran*, 251 F.R.D. 401, 405 (W.D. Mo. 2008).

[43] *Jones*, 257 F.R.D. at 191 (citing *Paxton v. Union National Bank*, 688 F.2d 552, 562-63 (8th
Cir. 1982)).

to satisfy the adequacy requirement under Rule 23(a)(4). For the same reason, the Court should provisionally appointment undersigned counsel as Settlement Class under Rule 23(g).

### F. The Rule 23(b)(3) Factors are Met

Rule 23(b)(3) "provides that a class action may be maintained if the court finds the questions of law or fact common to members of the class predominate over the questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the dispute.[44] Here, the case involves a common set of faxes sent by or on behalf of Defendants advertising the same "Doctors' Club" credit cards. The central questions of liability turn on generalized proof: (1) did Defendants authorize the faxes at issue to be sent?; (2) did the faxes lack the required opt-out language?; (3) did the faxes advertise goods or services of (or on behalf of) Defendants?; and (4) did Defendants or anyone operating on their behalf have prior express consent to send the faxes? These questions are susceptible to class adjudication on an up or down basis. Also, resolution of the Settlement Class Members' claims through a class-wide settlement and claims process is the superior way to proceed. Resolution of potentially hundreds of thousands of claims in one action is far superior to individual lawsuits, because it promotes efficiency and consistency of adjudication. Absent class treatment, each Settlement Class Member would be required to present the same or essentially the same legal and factual arguments, in separate and duplicative proceedings, the result of which would be a multiplicity of trials and potentially inconsistent verdicts. Moreover, because the TCPA does not contain a fee-shifting provision, individual claims may not be worth pursuing, given the small

---

[44] *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1119 (8th Cir. 2005). Also, when settling a class action, a plaintiff does not need to prove manageability under Rule 23(b)(3) as if the case were being fully litigated, because settlement may eliminate the issues that he court would have to resolve if the parties fought out the case. *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 660 (7th Cir. 2004) (citing *Amchem*, 521 U.S. at 117).

amount of damages likely to be recovered relative to the resources required to prosecute an individual action.   As many courts have recognized, aggregating individual TCPA claims is therefore the best and most feasible means of achieving redress for putative class members in TCPA cases.[45]

### G.  The Rule 23(b)(2) Standard is Met

To show that certification is warranted under Rule 23(b)(2), the Plaintiff must show that the Defendants have "acted or refused to act on grounds that generally apply to the class so that injunctive or declaratory relief is appropriate."[46]   That standard will be easily met here, because the case concerns a blast faxing promotional campaign that the Second Amended Complaint alleges occurred without the prior express consent of the Plaintiff or any other Settlement Class Members.[47]   Again, for purposes settlement only, the Defendants do not dispute that certification under Rule 23(b)(2) is warranted.

### VI.   The Court Should Approve the Form and Method of Class Notice

Under Rule 23(e)(1)(B), the court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement.   "There is no one 'right way' to provide notice as contemplated under Rule 23(e)."[48]   "Notice of a settlement proposal need only be as directed by the district court . . . and reasonable enough to satisfy due process."[49]   The best

---

[45] *See, e.g.*, *Agne*, 286 F.R.D. at 571-72; *Bee, Denning*, 310 F.R.D. at 629-630; *Kristensen*, 12 F. Supp. 3d at 1308.

[46] *Ford*, 2010 U.S. Dist. LEXIS at *22

[47] Again, as with provisional certification of a Rule 23(b)(3) class, the Court need not finally determine at this stage whether certification of a Rule 23(b)(2) class is warranted.

[48] *In re Wireless Tele. Fed. Recovery Fees Litig.*, No. 02-091, 2004 U.S. Dist. LEXIS 23342, at *26 (W.D. Mo. Apr. 20, 2004).

[49] *DeBoer v. Mellong Mortg. Co.*, 64 F.3d 1171, 1176 (8th Cir. 1995).

practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."[50]  Also, the substance of the notice must describe, in plain language, the nature of the action, the definition of the proposed settlement class, the class claims, and the defenses at issue.[51]  The notice must also explain that class members may enter an appearance through counsel if desired, may request to be excluded from the class, and that a class judgment shall have a binding effect on all class members.[52]

Here, the parties' Notice Plan and associated Fax and Website Notices satisfy the Rule 23 requirements and associated due process considerations.  The parties propose that a Fax Notice of the settlement be faxed to the same numbers to which faxes were sent (*i.e.*, the Settlement Class Members' fax numbers).  Given the circumstances of the fax transmittal and manner in which fax numbers were obtained and maintained, the parties have no other reasonable means of identifying individual Settlement Class Members.  Furthermore, under the Notice Plan and Settlement, the Claims Administrator will establish and maintain a settlement website that will provide substantial information to Settlement Class Members in an accessible format, including links to the Website Notice, the Claim Form, and other case-related materials.  Through these means, the Notice Plan is reasonably calculated to apprise Settlement Class Members of the pendency of the case, class certification (for settlement purposes), the terms of the settlement, the means by which Settlement Class Counsel will seek to be paid, the rights to opt out, and the binding nature of the settlement.

---

[50] *Petrovic*, 200 F.3d at 1153 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306. 314 (1950)).

[51] Fed. R. Civ. P. 23(c)(2)(B).

[52] *Id.*

Finally, the Court should appoint Garden City Group as the Claims Administrator. As set forth in the Castaneda Affidavit, Garden City Group has extensive experience handling claims administration in class cases, including numerous class actions within the Eighth Circuit and TCPA junk fax or robo-dialing cases. Utilizing Garden City Group will ensure that the claims administration process runs smoothly, accurately, and efficiently for the benefit of Settlement Class Members.

**VII.   The Court Should Stay this Action and Enjoin Related Lawsuits by Settlement Class Members.**

To preserve the *status quo* while the Court considers approval of the settlement, the Court should stay this case and enter an injunction against the Settlement Class Members. Specifically, an injunction would prevent Settlement Class Members from initiating or other prosecuting a lawsuit or other proceeding relating to the same facts and circumstances at issue here, unless and until they (a) are excluded from the Settlement Class by action of the Court, (b) the Court denies approval of the settlement, or (c) the Settlement Agreement is otherwise terminated. This type of "injunctive relief is commonly granted in preliminary approvals of class-action settlements pursuant to the All Writs Act.[53]

An injunction is necessary while the Court considers this Motion and, if the Motion is granted, whether final approval under Rule 23 is warranted. Allowing additional actions to

---

[53] *In re Uponor, Inc.*, No. 11-MD-2247, 2012 U.S. Dist. LEXIS 5339, 23-34 (D. Minn. Jan. 18, 2012); *see also In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 261 F.3d 355, 360-61 (3d Cir. 2001) (upholding order enjoining all class members from "filing, commencing, prosecuting, continuing, litigating, intervening in or participating as class members in, any lawsuit in any jurisdiction based on or related to the facts and circumstances underlying the claims and causes of action in this lawsuit, unless and until such [class member] has timely excluded herself or himself from the Class."); *see also In re Diet Drugs Prods. Liab. Litig.*, 282 F.3d 220, 233 (3d Cir. 2002)( In complex cases where certification or settlement has received conditional approval ... the challenges facing the overseeing court are such that it is likely that almost any parallel litigation in other fora presents a genuine threat to the jurisdiction of the federal court.")

proceed in other jurisdictions runs the risk of subjecting the parties to contradictory rulings that may undermine this Court's jurisdiction.  An injunction will also eliminate the need for First Arkansas to incur further time and expense litigating in another forum while approval of the settlement is pending.  Entering the injunction will not prejudice any Settlement Class Members, who will be free to opt out of the settlement and to pursue individual actions against the defendants if they wish to do so.  Accordingly, an order enjoining the Settlement Class Members is warranted in this case.

**VIII.**   **The Court Should Schedule a Final Approval and Fairness Hearing**

The proposed settlement is subject to preliminary approval and the Settlement Class provisionally should be certified.  The Court therefore should direct that notice be sent to the Settlement Class and should set a final approval and fairness hearing to determine whether the Settlement and Settlement Class meet the applicable Rule 23 standards.

**CONCLUSION**

For the reasons set forth above, the Court should provisionally: (1) approve the class settlement; (2) certify the Settlement Class under Rule 23(b)(3) and (b)(2), (3) appoint the Plaintiff as class representative, (4) appoint undersigned counsel as Settlement Class Counsel, (5) approve the form, manner, content of the proposed class notices, (6) appoint Garden City Group as the Claims Administrator, and (7) schedule a final approval/fairness hearing under Fed. R. Civ. P. 23.

DATED: October 11, 2016                    Respectfully submitted,

                                        */s/ James A. Streett*
                                        **STREETT LAW FIRM, P.A.**
                                        James A. Streett, ABA #2007092
                                        Alex G. Streett, ABA #65038
                                        107 West Main
                                        Russellville, AR 72801

Telephone:     479-968-2030
Facsimile:     479-968-6253
James@StreettLaw.com
Alex@StreettLaw.com

**BRANSTETTER, STRANCH, & JENNINGS, PLLC**
Joe P. Leniski, Jr., TN Bar #22891
Gerard Stranch, TN Bar#23045
223 Rosa Parks Avenue, Suite 200
Nashville, Tennessee 37203
Telephone:     615-254-8801
Facsimile:     615-255-5419
joeyl@bsjfirm.com
gerards@bsjfirm.com

*Attorneys for the Plaintiff*

## CERTIFICATE OF SERVICE

I, James A. Streett, hereby certify that I am an attorney for the Plaintiffs, and on this day I caused this filing to be served on all counsel of record in this proceeding via CM/ECF.


DATED: October 11, 2016                    */s/ James A. Streett*                    
                                           JAMES A. STREETT