**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**

| | | |
|---|---|---|
| DAVIS NEUROLOGY, P.A., | ) | |
| on behalf of itself and all other | ) | |
| entities and persons similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | 4:16-cv-371-BSM |
| v. | ) | |
| | ) | Judge Miller |
| DENTAL EQUITIES, LLC, d/b/a | ) | Magistrate Judge Deen |
| PEER UNITED; | ) | |
| FIRST ARKANSAS BANK & TRUST; | ) | |
| and JOHN DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |

### NOTICE OF OBJECTION TO MOTION FOR PRELIMINARY APPROVAL

Scoma Chiropractic, P.A., Florence Mussat, M.D., S.C., and Dr. William P. Gress (collectively, "Scoma Plaintiffs") respectfully submit this notice of objection to the proposed class settlement.  While Davis Neurology, P.A. ("Davis") has filed a motion for preliminary approval as "unopposed", the proposed settlement agreement and class notice fail to mention, give notice to the parties in, or otherwise refer to the Scoma Plaintiffs' pending action in the U.S. District Court for the Middle District of Florida, and is otherwise unfair, inadequate and unreasonable to the proposed settlement class.  The Scoma Plaintiffs oppose the proposed settlement and request a hearing on their motion to intervene and a hearing on the motion for preliminary approval.

The Scoma Plaintiffs request the following relief based on their objections:  (1) that the proposed class action settlement not be given preliminary approval (and that the injunction, imposed by the parties' settlement agreement which prohibits the Scoma Plaintiffs from proceeding with their action pending in the Middle District of Florida, be vacated); and (2) that

Davis Neurology, P.A. and its counsel, the Streett Law Firm, P.A. and Branstetter, Stranch, & Jennings, PLLC not be permitted to represent the class in this case and that other proposed class representatives and counsel be selected to represent the class in this case.

Introduction

First Arkansas Bank & Trust violated the Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005, 47 U.S.C. § 227 ("JFPA") by sending or causing to send some 380,000 unsolicited advertising faxes to promote MasterCard branded Doctor's Club credit cards.  In August, 2016, after receiving a zip drive from Dental Equities, LLC's principal, Dr. Shahmohammadi ("Dr. Shah") as a *quid pro quo*, (that is, Dr. Shah provided Davis with information in exchange for a voluntary dismissal)[1] and without conducting any formal discovery, taking any depositions, or obtaining a responsive pleading from defendant Plaintiff Davis and its lawyers collusively agreed to settle this case for an unreasonably and unfair amount.

"[O]bjectors play an essential role in judicial review of proposed settlements of class actions."  *Pearson v. NBTY, Inc.*, 772 F.3d 778, 787 (7th Cir. Nov. 19, 2014).  The Scoma Plaintiffs are the named Plaintiffs in a junk fax case pending in the Middle District of Florida, case number 2:16-cv-00041-UA-MRM ("Scoma Action"), a case in which First Arkansas Bank & Trust ("FAB&T") justifiably feared it would have to pay considerably more.

FAB&T undertook what is commonly referred to as a "reverse auction."  *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277 (7th Cir. 2002).  This is "the practice whereby the defendant in a series of class actions picks the most ineffectual class lawyers to negotiate a settlement

---

[1] *Dkt. No. 25*, p.4 ("As a condition of the dismissal, Dr. Shah agreed to furnish additional information with respect to the fax campaign. . .").

within the hope that the district court will approve a weak settlement that will preclude other claims against the defendant . . . The ineffectual lawyers are happy to sell out a class they anyway can't do much for in exchange for generous attorney's fees, and the defendants are happy to pay generous attorneys' fees, since all they care about it the bottom line . . ." *Id*. at 282.

The result is a bad deal for the settlement class.  While FAB&T faced in excess of $190 million in liability, and has a net worth of $135 million, Davis and its lawyers, without any discovery, notice or investigation of any potential defenses, collusively settled the case for only $1.525 million.  Davis and its attorneys are paid handsomely if the settlement is approved. Davis would receive a $10,000 incentive award and its lawyers would get up to 30% of the settlement fund or $457,500, plus expenses.  Blinded by their potential payday, Davis and its lawyers proceed with presenting the settlement.  The Scoma Plaintiffs object in order to protect the proposed class from this proposed settlement.

The Court's role in considering preliminary approval here is anything but "perfunctory." *Zimmerman v. Zwicker & Assocs.*, 2011 WL 65912, at *3 (D.N.J.  Jan. 10, 2011).  Among other things, "[a]t the preliminary approval stage [courts] must determine that the requirements for class certification under Rule 23(a) and (b) are met." *Harlan v. Transworld, Systems, Inc.*, 302 F.R.D. 319, 328 (E.D. Pa. 2014).  And "Rule 23 must be rigorously applied even at this 'preliminary' stage." *In re Ephedra Prods. Liab. Litig.,* 231 F.R.D. 167, 170 (S.D.N.Y. 2005). The proposed class here fails that standard:  A nationwide settlement purporting to release consumers' valuable claims cannot be permitted where it bars claims against another party with greater assets that FAB&T.  If Davis had taken any discovery, and done any investigation independent of the information it received from FAB&T and *quid pro quo* from Dr. Shah, it would have determined that MasterCard International is a proper party and the proposed class

cannot release its claims against it as well as FAB&T for a pittance.  Importantly, the motion for preliminary approval fails to provide any justification for the low dollar value of the settlement when publicly available financial information about FAB&T is available online.  Moreover, the motion for preliminary approval fails to contain any discussion of risk assessment in continued litigation.  "There is little evidence here from which the Court can make such a 'ballpark valuation.'"  *Martin v. Cargill Inc.*, 295 F.R.D. 380, 384 (D. Minn. 2013).  The $1.525 million settlement is not justified and is unfair and unreasonable.

At the preliminary approval stage, courts must be "particularly scrupulous," because Rule 23 "imposes on the trial judge the duty of protecting absentees, which is executed by the court's assuring the settlement represents adequate compensation for the release of the class claims."  *Martin v. Cargill, Inc.*, 295 F.R.D. 380, 383 (D. Minn. 2013).  Once preliminarily approved, a proposed settlement gains "an initial presumption of fairness" that can be difficult to overcome later in the process, after significant notice costs have been incurred.  *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995).  Absent class members are particularly at risk during this stage and so "the district court acts as a fiduciary, serving as a guardian  of the rights of absent class members."  *In re Wireless Telephone Federal Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (8th Cir. 2005).  *Accord, Zients v. LaMorte*, 459 F.2d 628, 630 (2d Cir. 1972); *In re Orthopedic Bone Screw Prods.*, 246 F.3d 315, 321 (7th Cir. 2001).  That is especially true for settlement classes like the one proposed here, which "require closer judicial scrutiny" and require a "*higher* showing of fairness."  *Martin*, 295 F.R.D. at 385 (emphasis in original).  The proposed settlement releases FAB&T and MasterCard International, as an agent for both Dental Equities, LLC and FAB&T, in exchange for limited monetary relief that pales in comparison to both the potential liability in this case for

a non-willful violation of the JFPA and the ability of FAB&T and MasterCard International to pay a more substantial settlement fund.   The proposed settlement fails to meet this standard of fairness.

This Court's scrupulous evaluation of the proposed settlement is particularly necessary in light of its unusually broad scope.  The settlement would stop all lawsuits against FAB&T, as well as any lawsuits against any of the Released Parties asserting any of the Released Claims, and enjoining the Scoma Plaintiffs as well as the other approximate 380,000 consumers from pursuing their rights through lawsuits or settlements.  Importantly, the injunction, settlement agreement, and the notice does not mention the existence of the Scoma Plaintiffs' lawsuit.

As the leading treatise of class action law cautions, courts must be especially cautious about "simply sign[ing] the moving parties' proposed preliminary approval order without focusing on the fact that they are thereby enjoining parallel litigation."  4 Newberg on Class Actions § 13:19 (5th ed.).

> Quite often, the presence of such a provision in a preliminary approval order is evidence that the parties are settling the present case precisely to enjoin collateral litigation, a practice that raises a red flag about whether the present settlement is a collusive suit aimed at foreclosing a stronger suit in the collateral forum.

*Id*.  Therefore, courts "should be on the lookout for such provisions and wary about signing them."  *Id*.  That is reason enough to deny preliminary approval here.

The broad release and injunction in the proposed settlement are clear "red flag[s]" that this settlement is an impermissible "collusive suit."  *Id*.

Faced with the continued litigation and likely liability in the Scoma Action, FAB&T appears to have intentionally held a reverse auction on its pending liabilities.  FAB&T picked the case in its home state, with seemingly inexperienced JFPA/TCPA lawyers, sought to certify a nationwide class and negotiated a sweetheart deal "in the hope that the district court will approve

a weak settlement that will preclude other claims against the defendant." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 282 (7th Cir. 2002).  The Scoma Plaintiffs expressed concern about this practice in their memorandum in support of their motion to intervene.  But Davis' attorneys were undeterred in their desire to settled and obtain an easy payday.  After reaching an agreement, FAB&T rushed their request for preliminary approval, informing no other court or party – even though the same lawyer that represents FAB&T in this case represents them in the Scoma Action.  This strategy is not new:  The settlement offers the class pennies on the dollar, the plaintiffs' lawyers "are happy to sell out a class" in exchange for "generous attorneys' fees" – in this case up to $457,500, plus expenses – and the "defendants are happy to pay the generous attorneys' fees since all they care about is the bottom line."  *Id*.  This Court should not place its imprimatur on this cynical, collusive strategy.

Davis and its lawyers did not address any of the multiple fairness factors required to approve a settlement.  *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975).  The most important factor in determining fairness is "'the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement.'"  *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1150 (8th Cir. 1999) quoting *Grunin*, 513 F.2d at 124.  Davis failed to tell the Court *anything* about the magnitude of Defendants' liability, including that every class member stood to gain at least $500 in TCPA statutory damages for each fax transmission sent, and perhaps as much as three times that amount if the violation is willful.

At a minimum, to receive preliminary approval, a proposed settlement must "be the product of serious, informed, noncollusive negotiations, ha[ve] no obvious deficiencies, . . . not improperly grant preferential treatment to the class representative or segments of the Settlement Class and fall[] within the range of possible approval which could ultimately be given final

approval by the Court." *Nienaber v. Citibank (S. Dakota) N.A.*, 2006 WL 2850535, at *2

(D.S.D. Sept. 29, 2006).  The proposed settlement fails here on all accounts.  Proposed

intervenors accordingly request that this Court set a hearing on their motion to intervene, grant

their request for intervention, and deny preliminary approval of the settlement.  Proposed

intervenors intend on filing an additional brief further detailing its objections.

Respectfully submitted,


 s/ Robert R. Cloar
Robert R. Cloar

Robert R. Cloar
Attorney At Law, Bar No. 72025
P.O. Box 1623
Fort Smith, AR 72902
 (479) 783-1186
rrcloar@gmail.com

Daniel A. Edelman
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, IL 60603
(312) 739-4200
dedelman@edcombs.com
*Application for Admission Pro Hac Vice Pending*

*Attorneys for Proposed Intervenors*

# CERTIFICATE OF SERVICE

I, Robert Cloar, hereby certify that on October 18, 2016, a true and correct copy of the foregoing document, was filed via the Court's CM/ECF system which caused notice to be sent to the following parties:

| | |
|---|---|
| James A. Streett<br>Alex G. Streett<br>Streett Law Firm, P.A.<br>107 West Main<br>Russellville, AR 72801<br>james@streettlaw.com | Gary D. Marts, Jr.<br>Jaimie Grunert Moss<br>Patrick Darrow Wilson<br>Wright, Lindsey & Jennings<br>200 West Capitol Ave., Ste. 2300<br>Little Rock, AR 72201<br>gmarts@wlj.com<br>jmoss@wlj.com<br>pwilson@wlj.com |
| Joe P. Leniski<br>Branstetter, Stranch & Jennings PLLC<br>223 Rosa L. Parks Ave., Ste. 200<br>Nashville, TN 37204<br>jleniski@branstetterlaw.com | Lewis S. Wiener<br>Sutherland Asbill & Brennan LLP<br>700 Sixth Street NW, Suite 700<br>Washington, D.C. 20001<br>lewis.wiener@sutherland.com |

s/ Robert R. Cloar
Robert R. Cloar

Robert R. Cloar
Attorney At Law, Bar No. 72025
P.O. Box 1623
Fort Smith, AR 72902
(479) 783-1186
*Attorney for Proposed Intervenors*